[No. F003258. Fifth Dist. Sept. 27, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE VASQUEZ SOLIS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

John Francis Bowman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally and Lisa Lewis Dubois, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MARTIN, J.**—After trial by jury, defendant was convicted of two counts of rape (Pen. Code, § 261, subd. (2))[1] and one count of burglary (§ 459). The jury further found defendant used a deadly weapon, a knife, in the commission of the second rape. In a separate, bifurcated trial, the court found an alleged prior felony conviction for involuntary manslaughter (former § 192, subd. 2) was true. The trial court sentenced defendant to a total term of imprisonment of 18 years. Defendant filed a timely notice of appeal.

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

## STATEMENT OF FACTS

Twenty-two-year-old Hilaria T. moved from Mexico to the United States with her four-year-old son in 1980. She settled in Sanger, California, to do farm labor, but did not have a permit when she entered the country.

Hilaria met defendant in November 1982 while working in the fields. He moved in with Hilaria and her son one month later, promising to help pay for the food, rent, and utilities. Sometime after they had been living together, Hilaria learned defendant had a wife. Defendant broke his promise to help with the monthly bills and beat Hilaria. As a result, she ordered defendant to move out of the house at the end of June 1983. He left and began living in a trailer on his mother's property in Fresno. However, he did not want to break up with Hilaria and unsuccessfully attempted a reconciliation.

Sometime in early July, defendant confronted Hilaria outside the home of her friends, Evangelina and Juan Brezeno. He threatened to kill Juan if Hilaria did not go with him. He also threatened several neighbors who were there and ordered them not to help Hilaria or he would report them all to the Border Patrol. Fearing for her neighbors, Hilaria took her son and accompanied defendant.

He drove them to his trailer in Fresno, put the child on the floor, and ordered Hilaria onto the bed. Defendant's mother and sister arrived at that point. He told Hilaria if she made any noise, the same thing that happened to his brother would happen to her. Defendant previously told her he had killed his brother with a knife.

Defendant's mother inquired if Hilaria was present. One of Hilaria's Sanger acquaintances called Mrs. Solis and said the police were looking for defendant. The acquaintance said defendant had taken Hilaria away by force. When defendant admitted Hilaria was with him, his mother and sister left and went into the house. He then raped Hilaria in the trailer and took her back to Sanger the following day. Hilaria did not call the police because defendant had threatened to contact immigration authorities and to make her son "disappear."

On July 7, 1983, Hilaria was at home with her son when she received a 1:30 a.m. telephone call from defendant. Defendant said he wanted her to live with him again and he would take her by force if she did not comply. Hilaria immediately awakened her son, began dressing him, and prepared to leave. She was afraid defendant would do something to her or her child. Before she could finish, defendant broke through the back door of her home, knocked down a chair she had placed there for protection, and splintered

the door jamb. Hilaria ran to call the police, but defendant got a knife from the kitchen and threatened her. Hilaria did not complete the call because she was afraid he would stab her in the back as he had done his brother. He ordered her onto the bed and then raped her. Defendant fell asleep around 5 a.m. and Hilaria slipped out of the house. She ran next door where her neighbor, Maria Lopez, called the police.

Sanger Police Officer Epifanio Cardenas responded to the call and met Hilaria outside her home. Cardenas went inside with her and observed defendant asleep on the bed. Defendant awoke, looked at Hilaria in surprise, and said, "Hey, if you guys want me to leave, I'll leave right now and not bother her anymore."

Defendant was arrested and jailed. While incarcerated, he called Hilaria and threatened her not to press charges or "it was going to be worse for [her] than for him."

Dr. Jo Linder, Valley Medical Center emergency physician, testified she examined Hilaria on July 7, 1983. Although Hilaria's condition was consistent with forced sexual intercourse, Dr. Linder could not conclude she had been raped.

Kenneth Penner testified he was a criminalist with the California Department of Justice Crime Laboratory in Fresno. He examined physiological samples from the defendant and victim. Penner concluded defendant was a possible source of the semen found in the victim.

### Defense

Defendant testified in his own behalf and denied raping Hilaria on either occasion. He admitted they engaged in sexual intercourse but claimed it was consensual. Defendant asserted Hilaria suggested a reconciliation, and she voluntarily accompanied him to the trailer. She also voluntarily had intercourse with him on the night of July 7 and only afterward told him she did not want him there anymore.

### DISCUSSION

### I. DID THE TRIAL COURT ABUSE ITS DISCRETION UNDER EVIDENCE CODE SECTION 352 BY ADMITTING EVIDENCE OF DEFENDANT'S PRIOR FELONY CONVICTION?

Defendant contends the trial court abused its discretion under Evidence Code section 352 by admitting evidence of his 1979 felony conviction for involuntary manslaughter.

■ In view of our Supreme Court's recent decision in *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], the trial court erred in admitting evidence of this prior felony conviction. In *Castro,* the Supreme Court addressed the impact of Proposition 8 on impeachment with felony priors. The three-justice lead opinion stated, "We shall hold that— always subject to the trial court's discretion under section 352—subdivision (f) authorizes the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty. On the other hand, subdivision (d), as well as due process, forbids the use of convictions of felonies which do not necessarily involve moral turpitude." (*Id.,* at p. 306.) Applying these rules, the court found the trial court erroneously permitted defendant, charged with receiving stolen property, to be impeached with a prior for simple heroin possession. The court held the latter offense does not necessarily involve moral turpitude. Further, the trial court erroneously permitted defendant to be impeached with a prior for heroin possession for sale. While possession for sale necessarily involves moral turpitude, i.e., not dishonesty but the intent to corrupt others, the trial court erroneously stated it had no discretion as to either prior. Finally, the court held under California Constitution, article VI, section 13 and *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], certiorari denied 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70], the errors were nonprejudicial. The court reasoned the prosecution case was strong, the defendant testified, and the jury knew defendant had a criminal past from defense witnesses who testified before defendant was impeached. Although the court held the trial court retained section 352 discretion, it did not discuss how the trial court might have exercised it with regard to the possession for sale prior.

In the instant case, the People concede defendant's prior conviction did not necessarily involve moral turpitude. Thus, it was error to admit evidence of this prior for the purpose of impeaching defendant's credibility. We need not reach the section 352 question. ■ However, we will also conclude the error was harmless because evidence of the prior homicide, as opposed to the felony conviction, was properly admitted to show the victim's state of mind.

Prior to trial, defendant's public defender sought to exclude evidence of the prior conviction in the People's case-in-chief or as evidence to impeach the credibility of defendant. The court ruled: "With reference to its use on the People's case in chief, the fact of the prior conviction, of course, would not be admissible as such. It might be the acts constituting the prior conviction might be admissible and relevant as going to the state of mind of the victim. But I think I would have to wait and hear some testimony before I can really rule on that point." During the People's case-in-chief, the fol-

lowing exchange occurred during the direct examination of the complaining witness:

"Q. [deputy district attorney Cooper] Why were you afraid that he would do something to you?

"A. Because many times he beat me and threatened to do things to my son.

"Q. All right. Were there any other reasons why you were afraid at that moment that he would do something?

"A. Yes.

"Q. Would you tell us, please?

"A. On one occasion he told me that he had killed a brother of his and that's the reason I was afraid, also, that he might do something to me.

"Q. All right. Were there any other things that he had done to you in the past that made you afraid he would do something on this night?

"A. Yes.

"MR. CASTRO [deputy public defender]: Excuse me, Your Honor. As to the statement elicited about the brother, I would request a limiting instruction to the jury.

"THE COURT: Very well.

"Ladies and gentlemen, the witness has testified that the defendant had told her previously that he had killed his brother. I'm admitting that solely for the purpose of showing the witness' state of mind. You are not to accept that as being the truth. You would not consider it as being true, only that that's what [he] told her to show her state of mind." Later in the examination, the complaining witness said on one occasion defendant obtained a knife from her kitchen and she thought he was going to stab her in the back. She believed he would do so "because he had already told me that he had done it with his brother. Why could he not do it to another person?" Defense counsel again requested a limiting instruction and the court stated: "Same admonition as previous, ladies and gentlemen." At the close of trial,

the court instructed the jury on CALJIC No. 2.09, evidence limited as to purpose.[2]

██ The short answer to defendant's argument on appeal, that the court erred in allowing this "state of mind" testimony, is defendant is precluded from raising the issue of admissibility on appeal. Questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection at the trial on the ground sought to be urged on appeal. (Evid. Code, § 353; *People* v. *Welch* (1972) 8 Cal.3d 106, 114-115 [104 Cal.Rptr. 217, 501 P.2d 225].) When defendant first sought to exclude evidence of defendant's prior involuntary manslaughter conviction, the trial court stated: "It might be the acts constituting the prior conviction might be admissible and relevant as going to state of mind of the victim. But I think I would have to wait and hear some testimony before I can really rule on that point." Defendant was clearly put on notice of the possible admission of such testimony. Yet, when the prosecutor asked the victim specific questions regarding why she was afraid of the defendant, *no objection was made*. Rather, defendant merely asked that the court give a "limiting instruction" to the jury. The trial court did so, twice, and later instructed in the language of CALJIC No. 2.09. ██ Thus, defendant is precluded here from raising this issue. Moreover, even if defendant's earlier motion to exclude is viewed as preserving this issue, the court did not err in admitting the testimony.

Section 261, subdivision (2) states: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:

". . . . . . . . . . . . . . . . . . . .

"(2) Where it is accomplished against a person's will by means of force or fear of immediate and unlawful bodily injury on the person or another." In prosecutions under section 261 in which consent is at issue, "consent" is defined to mean positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved. (§ 261.6.)

██ As a general rule, evidence that defendant committed other offenses is inadmissible if offered solely to prove his criminal disposition or propen-

---

[2]CALJIC No. 2.09 as read to the jury states: "Certain evidence was admitted for a limited purpose. [¶] At the time this evidence was admitted you were admonished that it could not be considered by you for any purpose other than the limited purpose for which it was admitted. [¶] You are again instructed that you must not consider such evidence for any purpose except the limited purpose for which it was admitted."

sity. (Evid. Code, § 1101, subd. (a).) The primary purpose of this rule is to protect against misuse of uncharged acts, prejudicing the defendant in the minds of the jurors. Nevertheless, evidence of other crimes is ordinarily admissible where it tends to show guilty knowledge, motive, intent, or presence of a common plan or design. (*People* v. *Tassell* (1984) 36 Cal.3d 77, 83-89 [201 Cal.Rptr. 567, 679 P.2d 1].) When prior offense evidence is relevant to prove some material fact at issue, other than mere general disposition of the defendant to commit such offenses, it is generally admissible. (Evid. Code, § 1101, subd. (b).)

■■ Defendant Solis' alleged attack on his brother and the victim's knowledge of these events were clearly relevant to the rape charged in the instant case. The district attorney charged defendant with rape accomplished against a person's will by means of force or fear of immediate and unlawful bodily injury on the person or another. Hilaria was well aware of defendant's alleged attack upon his brother. The attack was relevant in determining whether (1) defendant engendered in Hilaria a fear of immediate and unlawful bodily injury upon her or her son and (2) whether Hilaria gave positive cooperation in act or attitude pursuant to an exercise of free will. (§ 261.6.)

Defendant nevertheless contends: "Under People v. Tassell [*sic*] (1984) 36 Cal.3d 77, evidence of uncharged offenses is inadmissible to prove character or trait of character under Evidence Code section 1101, or to prove conduct on a specific occasion. Since neither identification nor intent to have sex with the 'victim' was at issue, the evidence of the prior homicide was irrelevant. It was too remote and prejudicial to use as a basis for the 'victim's' consent, for she said she did not consent to have sex, not that she consented out of fear of defendant killing her. She said she was afraid defendant would report her to the Border Patrol, since she was an illegal alien (P.C. § 261, subd. (7)). Defendant had also hit the alleged victim before . . . . Defendant had not threatened to kill the 'victim' but to beat her. Thus the prior homicide was irrelevant under the threats of deportation and force less than death, and the removal of her son . . . .

"It was surmise on the 'victim's' part that since defendant had killed several years before, he would kill her, too. . . . Defendant did not say he would kill her if she didn't have sex with [him]. As to the first event, the couple and her child went to a lake and ate out, without this fearfulness showing in her conduct, nor with any effort on her part to escape, or even to report the event for two weeks. . . ." Defendant's argument ignores the record. Hilaria did not testify defendant's earlier killing was the sole reason for her fear. Rather, she testified his prior violent act was one of several factors creating that fear. In addition, defendant contends Hilaria's state of mind was irrelevant and only his intent was relevant. He maintains: "It is

irrelevant to this rape case that defendant four years before had involuntarily killed his brother." Defendant implicitly assumes Hilaria could not reasonably fear him since involuntary manslaughter is not premeditated. The Penal Code defines that crime as the unlawful killing of a human being without malice "in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (§ 192, subd. (b).) Defendant's argument assumes Hilaria would base her conduct on a reasoned analysis of the legal elements of defendant's prior crime. Defendant assumes too much. There is no evidence she was even aware of the crime for which defendant was convicted or its legal significance. Rather, Hilaria simply knew defendant had killed his brother several years earlier and testified this was one of her reasons for fearing him. ■ The trial court properly admitted evidence of defendant's prior conviction to show the victim's state of mind but erroneously admitted the prior for impeachment purposes. ■ Where the latter occurs and the defendant testifies, *Castro* states a reviewing court must examine the entire record to determine whether it is reasonably probable a result more favorable to defendant would have occurred absent the error. (*People* v. *Castro, supra,* 38 Cal.3d at p. 319, citing Cal. Const., art. VI, § 13; *People* v. *Watson, supra,* 46 Cal.2d at p. 836.)

■ In the instant case, defendant testified on his own behalf and his counsel initially raised his prior record. On cross-examination, the prosecutor impeached the defendant in the following manner:

"Q. Okay. And the manslaughter conviction involving the killing of your brother, that was a felony conviction; is that right?

"MR. CASTRO: We're going to object, Your Honor.

"THE COURT: Overruled.

"THE WITNESS: It was a what?

"MR. COOPER: Q. A felony conviction; is that right?

"A. Yes."

The prosecutor referred to the prior conviction twice during oral argument. The first time the prosecutor discussed the victim's state of mind: "She's told you about her understanding, her belief, her state of mind, which is what that information about he told me he killed his brother, her state of mind, that was in her mind, that he himself had told her about that.

And he himself had told her what happened to him will happen to you at times when the threat was really needed." The second time, the prosecutor argued: "The next thing that happens is what? It's the night with the knife. That is really the next big encounter between these two parties. [¶] On that night when eventually in her mind, based on her world and what she thought, what threats she felt there were from him, based on what he told her about his brother and based on what he threatened to do and the child and everything, when the first opportunity came for her to get out of there and get the police she did." Neither statement referred to defendant's credibility as a witness. The court later instructed the jury certain evidence was admitted for a limited purpose and a witness' prior felony conviction could only be used to determine his or her believability. The victim testified she was afraid of defendant because she knew he had previously killed his brother, that she was afraid defendant would stab her in the back because he had already done it to his brother. Prior to the defendant's testimony, this was the only evidence before the jury regarding the alleged prior homicide. The defendant testified as a result of this incident he was convicted of involuntary manslaughter. We cannot surmise whether defendant would have volunteered this fact but for the trial court's prior erroneous ruling the conviction could be admitted for impeachment purposes if he elected to testify. However, we do not see how the admission might have contributed to his conviction. Without defendant's admission the jury knew only the defendant had told his victim he had killed his brother by stabbing him in the back. Thus, the jury could infer defendant had murdered his brother. With defendant's admission, the jury now realized the crime for which he was convicted was involuntary manslaughter, the least onerous felony arising from a homicide. Under these circumstances, defendant's admission could only have inured to defendant's benefit and, additionally, may have raised some doubt as to the victim's credibility.

The ruling on defendant's prior conviction did not keep him off the stand. He testified at length, spoke in an articulate manner, and had ample opportunity to present his case to the jury and did so. The prosecutor did not attack defendant's credibility during closing argument and did not make a major point of his prior conviction. "That [the defense] was unconvincing was not the fault of the trial court but of the weakness of defendant's story." (*People* v. *Rollo* (1977) 20 Cal.3d 109, 121 [141 Cal.Rptr. 177, 569 P.2d 771].) Upon examination of the entire cause, and the evidence, it is not reasonably probable a result more favorable to defendant would have been reached absent the error. ■ ■ ■ (*People* v. *Watson, supra,* 46 Cal.2d 818, 836.)[3]

---

[3]Although not addressed by either party to this appeal, we note a further question as to the proper standard of prejudice applicable in the instant case. In *Castro,* the trial court

## II. Did the Trial Court Erroneously Refuse to Instruct the Jury on Simple Assault as a Lesser Included Offense of Rape?*

. . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Franson, Acting P. J., and Hanson (P. D.), J., concurred.

---

allowed introduction of two prior felony convictions, possession of heroin and possession of heroin for sale, for the limited purpose of impeachment. Our Supreme Court concluded simple possession of heroin does not necessarily involve moral turpitude but possession for sale does. The court thereafter concluded that although error occurred, it was harmless under the *Watson* test. Thus, only one of the two admitted priors did not involve moral turpitude. In the instant case, the only admitted prior, involuntary manslaughter, does not involve moral turpitude (*ante*). The question then, on these facts, is whether the proper test is *Watson,* as applied in *Castro,* or the more stringent test applied in *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824, 24 A.L.R.3d 1065], "harmless beyond a reasonable doubt." Federal due process forbids the use of convictions of felonies which do not necessarily involve moral turpitude. (*People* v. *Castro, supra,* 38 Cal.3d at p. 306.)

   *Chapman* provides that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman* v. *California, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at pp. 710-711].) The burden is on the beneficiary of the error "either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment." (*Ibid.,* see also *People* v. *Spencer* (1967) 66 Cal.2d 158, 168 [57 Cal.Rptr. 163, 424 P.2d 715].) "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." (*Fahy* v. *Connecticut* (1963) 375 U.S. 85, 86-87 [11 L.Ed.2d 171, 173, 84 S.Ct. 229].)

   Under the doctrine of stare decisis and *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455-456 [20 Cal.Rptr. 321, 369 P.2d 937], we must adhere to the *Watson* standard in the instant case. However, assuming arguendo *Chapman* was applicable here, on the record before us, we would conclude the error was harmless beyond a reasonable doubt.

   *See footnote on page 877, *ante.*