[No. B006536. Second Dist., Div. Five. Sept. 18, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDDIE LITTREL, Defendant and Appellant.

**COUNSEL**

Lawrence D. Weber, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert R. Anderson and Gary R. Hahn, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FEINERMAN, P. J.**—Defendant, Freddie Littrel, was convicted by a jury of one count of attempted murder (Pen. Code, §§ 664/187) and one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)). An allegation that defendant used a dangerous and deadly weapon, a knife, within the meaning of Penal Code section 12022, subdivision (b), was found true as to the first count. Allegations that he inflicted great bodily injury,

within the meaning of Penal Code section 12022.7, were found true as to both counts. After a motion to strike two alleged prior convictions was denied, defendant admitted the priors.

Probation was denied. Defendant was sentenced to the upper term of nine years on count I, plus three years for the bodily injury enhancement. He received an additional five-year enhancement (Pen. Code, § 667.5, subd. (a)) for the first prior (second degree murder), and a one-year enhancement (Pen. Code, § 667.5, subd. (b)) for the second prior (felon in possession of a firearm). A midterm sentence of 16 months on count II was stayed pending service of sentence on count I, the stay to then become permanent. Appropriate custody and conduct credits were awarded.

On October 29, 1982, Emma Thorne (Emma), the victim of both counts, was at home with her daughter Tina, Tina's two children, and Tina's boyfriend Michael Strane (Strane). Defendant, Emma's boyfriend, was also present. Tina, her children and Strane spent the afternoon in Tina's bedroom. Emma and defendant were in the living room. About 6 p.m., Charlie Gilkie, Emma's ex-brother-in-law, came to the residence, greeted Emma and defendant, then went into an empty bedroom and went to sleep. Tina went to visit a neighbor as Gilkie came in, leaving her two children in her bedroom with Strane. When Tina left, Emma and defendant were in the living room arguing.

Tina was away for about 30 minutes. When she returned, she found the apartment door open. As she entered the apartment, she saw defendant come out of the kitchen carrying a steak knife. Defendant struck Emma in the chest with the knife. Tina saw her mother's face covered with blood. Tina ran screaming to her bedroom and locked the door. Gilkie came to the bedroom door to investigate the screaming. Tina, Strane and Gilkie went to the living room. Defendant was gone. Emma was lying with the knife protruding from her chest. She was not conscious. Tina thought she was dead.

When police arrived, Emma had regained consciousness. She was hysterical and attempting to remove the knife from her chest. Los Angeles Police Department Officer Johnson (Johnson) restrained her, as it would have been life threatening for her to remove the knife. Johnson observed numerous wounds to Emma's face and chest. Emma told the officer that defendant was the one who had stabbed her. Emma was taken to a hospital where the knife was surgically removed and wounds to her chest and face repaired.

Emma testified that she and defendant had been arguing about her unwillingness to go with him to visit his father. The argument was verbal, not

physical. Emma and defendant each had one drink during the afternoon. Just before defendant attacked her, Emma was sitting in the living room watching television. Defendant went into the kitchen. He asked Emma for some more liquor. She told him there was no more. Defendant came out of the kitchen and struck her on the head with a stainless steel pot. The next thing she remembered was waking up in the hospital three or four days later. She had not threatened defendant or used any type of weapon against him before he attacked her. She was not drunk at the time of the attack. She did not know if defendant was. However, he appeared to her to be high on something other than alcohol. The only evidence offered by the defense was the testimony of a doctor who examined Emma at the hospital the day after the attack and was told by her that she had been a heavy drinker for a number of years.

Prior to commencement of trial and again at the conclusion of the People's case, defendant requested the trial court to exercise its discretion and rule that his prior felony convictions would be inadmissible for impeachment purposes, should he choose to testify. Failing to anticipate *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], the trial court ruled that Proposition 8[1] mandated use of the priors for impeachment. Defense counsel informed the court that but for this ruling, defendant would have testified.

Failing also to anticipate the Supreme Court's decision in *People* v. *Fritz* (1985) 40 Cal.3d 227 [219 Cal.Rptr. 460, 707 P.2d 833], the trial court denied defendant's motion to strike the priors on the assumption that Proposition 8 left it with no discretion to do otherwise. It is conceded that the court, in failing to recognize its discretionary powers, committed both *Castro* and *Fritz* error. Our task is to determine how these errors should be redressed.

■ In *People* v. *Collins* (1986) 42 Cal.3d 378 [228 Cal.Rptr. 899, 722 P.2d 173], the Supreme Court explained the procedure to be followed on appeal in pending cases involving *Castro* error. According to *Collins,* our first task is to determine whether the defendant's prior convictions were admissible or excludable at the trial court's discretion, or inadmissible as a matter of law. Any prior felony conviction involving moral turpitude is prima facie admissible at the court's discretion. (*People* v. *Castro, supra,* 38 Cal.3d 301.) *Castro* defines moral turpitude as a readiness to do evil. (38 Cal.3d at p. 314.) Defendant's prior second degree murder conviction certainly demonstrates a readiness to do evil, murder being the most evil of crimes. ■ As for the second prior conviction, by enacting Penal

---

[1]California Constitution, article I, section 28, subdivision (f).

Code section 12021,[2] the State of California has decreed that it recognizes no legitimate use of a concealable firearm by a convicted felon. The statute is based on the theory that a convicted felon has, by his prior conduct, demonstrated that if he comes into possession of a concealable firearm, he will use it to do evil. Therefore, we conclude that possession of a firearm by a felon is a crime involving moral turpitude.

■ The Court, in *Collins, supra,* 42 Cal.3d 378, also directs us to determine whether or not the prior convictions were inadmissible as a matter of law because of the peculiar facts of the case. We find no facts in the present case which would render the priors inadmissible as a matter of law. This was a proper case for exercise of the court's discretion.[3]

*Collins* further instructs that having reached this conclusion, and since defendant did not testify, we must reverse the judgment and remand the matter for further proceedings in accordance with the detailed instructions set forth in *Collins*.

In light of the necessity for a remand pursuant to *Collins*, we deem it appropriate to remand the matter also for the purpose of enabling the trial court to exercise its discretion in accordance with the mandate of *People* v. *Fritz, supra*.

---

[2]Penal Code section 12021 provides: "(a) Any person who has been convicted of a felony under the laws of the United States, of the State of California, or any other state, government, or country, or of an offense enumerated in Section 12001.6, or who is addicted to the use of any narcotic drug, who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense, and shall be punishable by imprisonment in the state prison, or in a county jail not exceeding one year or by a fine not exceeding one thousand dollars ($1,000), or by both. [¶] (b) Notwithstanding the provisions of subdivision (a), any person who has been convicted of a felony or of an offense enumerated in Section 12001.6, when such conviction results from certification by the juvenile court for prosecution as an adult in an adult court under the provisions of Section 707 of the Welfare and Institutions Code, who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense and shall be punishable by imprisonment in the state prison, or in a county jail not exceeding one year or by a fine not exceeding one thousand dollars ($1,000), or by both. [¶] (c) Subdivision (a) shall not apply to a person who has been convicted of a felony under the laws of the United States unless: [¶] (1) Conviction of a like offense under California law can only result in imposition of felony punishment; or [¶] (2) The defendant was sentenced to a federal correctional facility for more than 30 days, or received a fine of more than one thousand dollars ($1,000), or received both such punishments."

[3]In supplemental briefs prepared after the *Collins* decision was filed, both parties assume that the prior convictions in this case fall into the category of felonies admissible in the court's discretion.

The judgment is reversed; the matter is remanded for further proceedings as indicated.

Ashby, J., and Eagleson, J., concurred.