4 Cal.App.4th 1299 (1992)
6 Cal. Rptr.2d 259
THE PEOPLE, Plaintiff and Respondent,
v.
DAVID ALMAN WHITE et al., Defendants and Appellants.
Docket Nos. F014112, F014375.
Court of Appeals of California, Fifth District.
March 25, 1992.
*1300 COUNSEL
Gregory Marshall, James E. McCready and Linda Buchser, under appointments by the Court of Appeal, for Defendants and Appellants.
*1301 Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Michael J. Weinberger and Roger E. Venturi, Deputy Attorneys General, for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
BUCKLEY, J.
Following trial on an information alleging 18 counts of various offenses, appellants David Alman White and Tommy Carl Naus were convicted of a conspiracy to sell methamphetamine. (Pen. Code, § 182; Health & Saf. Code, § 11379.)[1]
In the published portion of this opinion we hold that a conviction of Penal Code section 246 (discharging a firearm at an inhabited dwelling house) is a crime of moral turpitude as defined in People v. Castro (1985) 38 Cal.3d 301 [211 Cal. Rptr. 719, 696 P.2d 111] and therefore admissible for purposes of impeachment.[2*]
We will affirm.

STATEMENT OF FACTS - DISCUSSION, II.[]
.... .... .... .... .... .... .... .

III.

Is Shooting Into an Inhabited Dwelling a Crime of Moral Turpitude?
(1a) In a case of first impression, we are asked to decide whether shooting into an inhabited dwelling (Pen. Code, § 246) is a crime of moral turpitude within the meaning of People v. Castro, (1985) 38 Cal.3d 301 [211 Cal. Rptr. 719, 696 P.2d 111].
At trial, the prosecution was allowed to impeach White with his 1978 conviction of Penal Code section 246.[5] White contends the trial court erred in its assessment of Penal Code section 246 as a crime of moral turpitude.
*1302 This court summarized the Castro rule in People v. Mansfield (1988) 200 Cal. App.3d 82, 87 [245 Cal. Rptr. 800]:
(2a) "Pursuant to People v. Castro, supra, 38 Cal.3d 301, and subject to the trial court's discretion under Evidence Code section 352, only prior felony convictions that necessarily involve moral turpitude may be used to impeach a witness in a criminal proceeding. [Citation.] `Moral turpitude' means a general `readiness to do evil' [citation], i.e., `an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' [Citations.] Castro makes no attempt to list or define those felonies which involve moral turpitude, but it makes clear that moral turpitude does not depend on dishonesty being an element of the felony. `[I]t is undeniable that a witness' moral depravity of any kind has some "tendency in reason" [citation] to shake one's confidence in his honesty.'"
One of the tenets of the Castro analysis is that in determining whether a crime is one of moral turpitude, a court must look only to the elements of the offense and decide whether its least adjudicated elements necessarily involve moral turpitude. Such limitation is made necessary by the confusion, surprise and prejudice to the defendant engendered by examination of underlying specific and often extraneous facts. (Cf. People v. Castro, supra, 38 Cal.3d at pp. 316-317.)
(1b) Seizing upon the phrase "least adjudicated elements," White makes a disingenuous argument. He contends that since a person could be convicted of Penal Code section 246 by shooting at a building which was actually unoccupied at the time the shot was fired, the least adjudicated element would simply consist of maliciously shooting at an unoccupied building without the intent or likelihood of committing serious bodily injury upon anyone else. We reject his attempt to minimize by syllogism the magnitude of Penal Code section 246.
For purposes of Penal Code section 246, a building is considered "inhabited" if there are permanent residents thereof, even if it is temporarily unoccupied. (People v. Rodriguez (1986) 42 Cal.3d 1005, 1018 [232 *1303 Cal. Rptr. 132, 728 P.2d 202].) (2b) Moreover, as pointed out in People v. Thomas (1988) 206 Cal. App.3d 689, 698 [254 Cal. Rptr. 15], the Supreme Court, in setting forth the "`least adjudicated elements of the conviction necessarily involve[d]'" standard in Castro could not have meant that a prior conviction for purpose of impeachment cannot be used if there is any conceivable set of facts under which the offense could have been committed free of moral turpitude. All that Castro requires is that moral turpitude can reasonably be inferred from the elements of the offense alone without regard to the facts of the particular violation.
(1c) We note that Penal Code section 247 makes punishable as a misdemeanor the discharge of a firearm at an uninhabited dwelling house. From a reading of the penal consequences of Penal Code sections 246 (felony) and 247 (misdemeanor), it is readily apparent that the Legislature has determined that shooting at an inhabited dwelling house is far more serious than if the house were uninhabited. There is no provision for a lesser range of punishment should the house be fortuitously unoccupied at the time of the discharge.
It is elementary, yet essential to this analysis, to note that inhabited is defined as "lived in." (Webster's New World Dict. (2d college ed. 1982) p. 724.) By definition then, inhabitants are generally in or around the premises. From this, we can readily perceive the inherent danger in one firing a weapon at an inhabited dwelling. Such an act is done with reckless disregard of probable consequences (someone being struck). (People v. Chavira (1970) 3 Cal. App.3d 988, 993 [83 Cal. Rptr. 851].)
Since Penal Code section 246 does not require a specific intent to accomplish an objective (e.g., injure, kill, frighten, etc.), White first argues, without citation, that Castro cannot be extended to apply to a conviction of section 246. He next argues that even if moral turpitude could be extended to a situation where there is some probability of injury, regardless of intent, even that probability is not among the least adjudicated elements of section 246.
He next makes the rather startling argument that if a person were killed as a result of a shot fired pursuant to Penal Code section 246, "the most likely crime of which the shooter would be guilty is involuntary manslaughter  one of the crimes which has been held not to involve moral turpitude," citing People v. Solis (1985) 172 Cal. App.3d 877, 883 [218 Cal. Rptr. 469].
Addressing his last conclusion first, we disagree that the most likely crime resultant from a death caused by firing into an inhabited dwelling would be involuntary manslaughter.
*1304 We have already found that one who fires shots into an inhabited dwelling is doing so with a reckless disregard for the consequences. (People v. Chavira, supra, 3 Cal. App.3d at p. 993.) In People v. Watson (1981) 30 Cal.3d 290, 300 [179 Cal. Rptr. 43, 637 P.2d 279], it was held that one who does an "`"`act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with a conscious disregard for life'"'" may be convicted of second degree murder. The Watson decision was significant because it extended the possibility of a second degree murder consequence to a person driving under the influence of alcohol under certain circumstances. The Supreme Court found malice (a necessary element of murder) implied from such a conscious disregard for others. (Id. at p. 298.)
We conclude that under the principles set forth in Watson, a person who demonstrates such wanton disregard for the life of another by firing shots into an inhabited dwelling could be convicted of second degree murder should someone die as a result. Castro defines moral turpitude as a readiness to do evil. (38 Cal.3d at p. 314.) A "second degree murder conviction certainly demonstrates a readiness to do evil, murder being the most evil of crimes." (People v. Littrel (1986) 185 Cal. App.3d 699, 702 [230 Cal. Rptr. 83].)
It has been held that possession of an illegal weapon is a crime of moral turpitude (People v. Garrett (1987) 195 Cal. App.3d 795, 799-800 [241 Cal. Rptr. 10])[6] and that possession of a firearm by a felon is a crime involving moral turpitude. (People v. Littrel, supra, 185 Cal. App.3d at p. 703.) Possession of such weapons was determined by each court to involve a readiness to do evil. (Garrett, supra, 195 Cal. App.3d at p. 800; Littrel, supra, 185 Cal. App.3d at p. 703.)
It would be anomalous to hold here that the "evil" actually done (shooting at an inhabited dwelling) was not also a crime of moral turpitude.
White cites certain cases which hold, as to the specific crime presented, that moral turpitude does not exist.[7] Drawing from the cases he cites, White argues that an element of the crime must involve dishonesty or significant *1305 injury to another person for moral turpitude to exist. Therefore, White contends that because the intent to do serious injury to a person or a likelihood of serious injury resulting to a person is not an element of the crime of shooting into an inhabited dwelling, the crime does not involve moral turpitude.
However, in People v. Lang (1989) 49 Cal.3d 991, 1010 [264 Cal. Rptr. 386, 782 P.2d 627], the Supreme Court held that escape by a convicted felon without force is a crime involving moral turpitude because it necessarily involves some form of stealth, deceit, or breach of trust and the potential for violence when an escaped felon is recaptured. Moral turpitude was found even though an injury to another or the likelihood of injury to another was not an element of the crime.
Although the least adjudicated elements of Penal Code section 246 do not require that an intent to injure or a likelihood of serious injury to another be present, there is always present a potential for violence in the commission of a violation of section 246. Penal Code section 246 is clearly a crime of moral turpitude.

DISPOSITION
The judgment is affirmed.
Stone (W.A.), Acting P.J., and Dibiaso, J., concurred.
A petition for a rehearing was denied April 20, 1992, and appellants' petition for review by the Supreme Court was denied June 10, 1992.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of footnote 2, the Statement of Facts and parts I and II.
[1] Naus was also convicted of certain weapons offenses not germane to this appeal.
[2*] See footnote, ante, page 1299.... .... .... .... .... ...
[] See footnote, ante, page 1299.
[5] Penal Code section 246 provides:

"Any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited housecar, as defined in Section 362 of the Vehicle Code, or inhabited camper, as defined in Section 243 of the Vehicle Code, is guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for three, five, or seven years, or by imprisonment in the county jail for a term of not less than six months and not exceeding one year.
"As used in this section, `inhabited' means currently being used for dwelling purposes, whether occupied or not."
Although the above reflects the current version of Penal Code section 246, the statute in effect in 1978 was, for all purposes pertinent here, identical.
[6] Actually, Garrett involved the prior conviction of conspiracy to possess an illegal weapon. However, the appellate court recognized the critical question was whether the "object of the conspiracy involved moral turpitude." (195 Cal. App.3d at p. 799.)
[7] The cases cited are as follows: People v. Castro, supra, 38 Cal.3d 301, 317, "simple" possession of drugs; People v. Solis, supra, 172 Cal. App.3d 877, 883, involuntary manslaughter; People v. Mansfield, supra, 200 Cal. App.3d 82, 88-89, battery; People v. Thomas, supra, 206 Cal. App.3d 689, 694, "simple" assault; People v. Cornelio (1989) 207 Cal. App.3d 1580, 1584-1585 [255 Cal. Rptr. 775], "simple" false imprisonment.