[No. B228244. Second Dist., Div. Two. May 24, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
SOLOMON ABYABWI GABRIEL, Defendant and Appellant.

452

**COUNSEL**

Alan E. Spears, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Scott A. Taryle and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHAVEZ, J.**—Defendant and appellant Solomon Abyabwi Gabriel appeals from his conviction of cultivation and possession of marijuana, and other offenses. He contends that the trial court erroneously admitted evidence of prior convictions for purposes of impeachment, and argues that without the evidence, there was a reasonable probability that the jury would have believed his testimony. We reject defendant's contentions and affirm the judgment.

## BACKGROUND

### 1. *Procedural Background*

Defendant was charged by information as follows: cultivating marijuana in violation of Health & Safety Code section 11358 (count 1); possession of marijuana for sale in violation of Health and Safety Code section 11359 (count 2); receiving stolen property in violation of Penal Code section 496, subdivision (a) (count 3);[1] unlawful possession of ammunition in violation of former section 12316, subdivision (b)(1) (count 4); misdemeanor possession of property with serial number removed in violation of section 537e, subdivision (a)(2) (count 5); and misdemeanor possession of burglar's tools in violation of section 466 (count 6). The information alleged as to counts 1 through 4 that defendant was free of custody on bail when he committed the offenses, within the meaning of former section 12022.1.

A jury found defendant guilty on all counts as charged except count 2. As to count 2, the jury found defendant guilty of the lesser included offense of possession of more than 28.5 grams of marijuana in violation Health and Safety Code section 11357, subdivision (c). After a bifurcated trial on the special allegation that defendant was free of custody on bail at the time of the offense, the jury found the allegation true as to counts 1, 3, and 4.

The trial court sentenced defendant to a total of four years in prison as to counts 1, 3, and 4, which was comprised of one-third the middle term of eight months as to each such count, running consecutively to the sentence imposed in Los Angeles Superior Court case No. MA038664, plus a two-year enhancement under former section 12022.1. As to each of counts 2, 5, and 6, the trial court imposed six months in jail and stayed each term pursuant to section 654. The court imposed mandatory fines and fees and awarded defendant no presentence credit. Defendant filed a timely notice of appeal.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

## 2. *Prosecution Evidence*

On July 29, 2009, Los Angeles Sheriff's deputies conducted surveillance with binoculars on defendant's rural property, and observed 17 growing marijuana plants. When defendant attempted to drive away from the property, several sheriff's cars blocked his way. The deputies detained defendant and searched his property.

The property was a fenced yard with a motor home, two large Connex trailers used for storage, numerous cars and trailers, a trampoline, and a planted area containing the marijuana plants. As a result of their search, deputies found dozens of tools, including a floor sander, a burglar's tool kit, and a "slim jim" tool for entering locked vehicles. The serial number of the floor sander had been scratched off and several stickers had been removed from it. Some of the tools were marked "E-Home Control" and bore phone numbers and the name McDugald. In the motor home, deputies found two boxes of live .22-caliber ammunition, envelopes addressed to defendant, and two books with defendant's name on them.

Sergeant Mark Machanic interviewed defendant after his arrest. Sergeant Machanic testified that defendant, who did not appear to be under the influence of marijuana during the interview, said he was growing the marijuana for medical purposes and claimed to have a doctor's note allowing him to possess eight ounces of cured marijuana, six mature plants, or 12 seedlings. When told that he had exceeded the limit, defendant denied there were more than six mature plants but admitted that he was the only person cultivating the plants and that they were all his. Defendant denied selling marijuana, but claimed that he gave some of it to friends without charge.

Defendant told Sergeant Machanic that he had purchased many of the tools from The Home Depot and other home improvement stores; that many had belonged to his deceased grandfather; and that he was storing some of the tools for friends. Defendant claimed he had receipts, but a later search in areas indicated by defendant turned up none. Defendant claimed that he had bought the floor sander new from a distributor for $400, but Sergeant Machanic researched the value and determined that the machine sold new for $2,800. When Sergeant Machanic asked defendant about the E-Home Control tools, defendant said that he had no idea where they had come from and that someone must have stored them on his property, but he would not identify them or provide contact information. Deputies had found a go-kart, a motorcycle, and a bicycle on the property. Defendant told Sergeant Machanic that

he bought one of them on the street in Los Angeles and had no receipts. Defendant admitted that the ammunition belonged to him, explaining that it was for firearms he no longer had. Defendant denied knowledge of the burglar's tools and slim jim.

Michael McDugald (McDugald) testified that he was the sole proprietor of eHomeControl.com, which sold custom residential electronics. He identified as his the tools that had been seized on defendant's property which bore his company's name. McDugald testified that the tools had been stolen in 2008 from a company automobile, which had been entered by means of a broken window. He replaced the tools at a cost of $2,800.

Sergeant Machanic testified as the prosecution's expert in possession of marijuana for sale and gave his opinion that defendant possessed the marijuana for sale. Sergeant Machanic had been with the other deputies at defendant's property the day of his arrest and had observed the items seized, but saw no sign that defendant was using the marijuana personally. He saw no pipes, smoking papers, or paraphernalia for marijuana consumption.[2] Sergeant Machanic thought defendant was unemployed, which suggested a need for income. Also, Sergeant Machanic saw many tools of the same type, which caused him to suspect that tools were taken in trade for marijuana. Based upon his training and experience, he believed that tools were commonly traded for narcotics. Sergeant Machanic also based his opinion on the volume of marijuana found. Each plant would produce from half a pound to a pound of marijuana, thus potentially yielding nine to 17 pounds of marijuana, more than needed for personal use.

### 3. *Defendant's Testimony*

Defendant testified that he was the only person cultivating marijuana on his property, and he denied selling it or bartering it. He claimed that he used marijuana to treat his headaches and that he was entitled to do so. Defendant acknowledged that all the seized tools belonged to him. He testified that he had bought the floor sander at a swap meet and claimed that he had never seen the tools belonging to McDugald. Defendant denied removing serial numbers from any property, denied having seen the burglar's tools before, and claimed that he did not keep ammunition. He denied he was unemployed at the time of his arrest. Defendant owned his own construction company, and before that, he had been employed by various other construction companies.

---

[2] Sergeant Machanic acknowledged that he saw no paraphernalia for a marijuana sales operation, such as packing devices, a scale, plastic bags of the type in which marijuana is sold, and marijuana drying racks, at either the storage yard or later during a search of defendant's home.

Defendant admitted that he had been convicted on April 20, 2009, of violating Health and Safety Code section 11358, unlawful planting, cultivation, or harvesting marijuana. He also admitted that on the same date, he was convicted of a violation of former section 12280, subdivision (b), possession of an assault weapon.[3]

Defendant called no other witnesses.

## DISCUSSION

### I.  *Impeachment with Prior Conviction*

Defendant contends that the trial court erred in allowing the prosecution to impeach defendant's credibility with evidence of his prior convictions for possession of an assault weapon and cultivation of marijuana. Defendant argues that neither offense was a crime of moral turpitude.

■ Subject to the trial court's discretion under Evidence Code section 352, California Constitution, article I, section 28, subdivision (f), "authorizes the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty. On the other hand, subdivision (d), as well as due process, forbids the use of convictions of felonies which do not necessarily involve moral turpitude." (*People v. Castro* (1985) 38 Cal.3d 301, 306 [211 Cal.Rptr. 719, 696 P.2d 111] (*Castro*).) Thus a "prior conviction should only be admissible for impeachment if the least adjudicated elements of the conviction necessarily involve moral turpitude." (*Id.* at p. 317.) Crimes involve moral turpitude when they reveal dishonesty, a " 'general readiness to do evil,' " " 'bad character,' " or "moral depravity." (*Id.* at pp. 306, 314, 315, italics omitted.) Such crimes involve an act of baseness, vileness, or depravity in the private and social duties which a person owes to others or to society in general, contrary to the accepted and customary rule of right and duty between people. (*People v. Brooks* (1992) 3 Cal.App.4th 669, 671 [4 Cal.Rptr.2d 570].)

### A.  *Possession of an assault weapon*

Neither defendant nor respondent has found authority holding that possession of an assault weapon is a crime of moral turpitude, and our own research has revealed none. In finding a violation of former section 12280, subdivision (b), to be a crime of moral turpitude, the trial court relied on a

---

[3] "Assault weapon" was defined as any of a number of firearm makes and models enumerated in former section 12276 or having the capacity to accept a detachable magazine and one or more of the characteristics listed in former section 12276.1, subdivision (a).

comparison to possession of a deadly weapon with intent to commit an assault, which was found to involve a readiness to do evil in *People v. Rivera* (2003) 107 Cal.App.4th 1374, 1382 [133 Cal.Rptr.2d 176].

Defendant argues that a violation of former section 12280, subdivision (b), cannot be a crime of moral turpitude because the least adjudicated mens rea would be criminal negligence. Defendant relies on *In re Jorge M.* (2000) 23 Cal.4th 866 [98 Cal.Rptr.2d 466, 4 P.3d 297], in which the California Supreme Court held that a conviction under that statute does not require proof that the defendant actually knew of the characteristics that made the weapon an assault weapon; it is sufficient if the defendant should have known, and was thus criminally negligent. (See *id.* at pp. 869–870, 887–888.)

The trial court's conclusion finds greater support in *People v. Garrett* (1987) 195 Cal.App.3d 795 [241 Cal.Rptr. 10] (*Garrett*), cited by respondent. In *Garrett*, the court held that the possession of an unregistered firearm was a crime of moral turpitude; the defendant had been convicted of a federal crime outlawing the possession of unregistered weapons of a nature similar to the weapons enumerated in former section 12020, which "outlaws a class of instruments normally used *only* for criminal purposes. [Citation.]" (*Garrett, supra,* at p. 800.)[4] The mere possession of such weapons indicates a readiness to do evil. (*Id.* at pp. 798–800; see *People v. White* (1992) 4 Cal.App.4th 1299, 1304 [6 Cal.Rptr.2d 259] [possession of illegal weapon is moral turpitude]; *People v. Littrel* (1986) 185 Cal.App.3d 699, 703 [230 Cal.Rptr. 83] [possession of firearm by felon]; cf. *People v. Robinson* (2005) 37 Cal.4th 592, 626 [36 Cal.Rptr.3d 760, 124 P.3d 363] [impeachment with misdemeanor concealed weapon conviction not an abuse of discretion].)

■ In the Roberti-Roos Assault Weapons Control Act of 1989 (the Act), which included section 12280 (the act is now found at § 30500 et seq.), the Legislature found and declared that each assault firearm "poses a threat to the health, safety, and security of all citizens of this state [and] has such a high rate of fire and capacity for firepower that its function as a legitimate sports or recreational firearm is substantially outweighed by the danger that it can be used to kill and injure human beings." (Former § 12275.5, subd. (a).) The Act defined "assault weapons" as specific types of semiautomatic weapons, listing them by manufacturer and model. (Former § 12276; see also former § 12276.5, subd. (a).) The Legislature expressly declared that its intent was

---

[4] "Firearm" was defined in the federal statute to include sawed-off shotguns and rifles, guns with silencers, and hand grenades, thus making clear that the crime of moral turpitude was the possession of an unregistered weapon belonging to a class of instruments " 'common to the "criminal's arsenal" ' " such as a sawed-off shotgun. (*Garrett, supra,* 195 Cal.App.3d at pp. 799–800 & fn. 22.) Weapons prohibited by former section 12020 also include brass knuckles, undetectable firearms, explosive bullets, nunchakus, multiburst trigger activators, concealed dirks or daggers, and blackjacks.

not "to place restrictions on the use of those weapons which are primarily designed and intended for hunting, target practice, or other legitimate sports or recreational activities." (Former § 12275.5, subd. (a).) Thus, it is clear that the Act's focus was on weapons used primarily to commit crimes, like that of section 12020, which "outlaws a class of instruments normally used *only* for criminal purposes. [Citation.]" (*Garrett, supra*, 195 Cal.App.3d at p. 800.) Just as possession of an unregistered firearm is a crime of moral turpitude because such weapons are normally used for criminal purposes, assault firearms are also typically used to commit crimes, and as the Legislature has outlined, cause greater harm to the public than general firearms, and thus possession of same should be considered a crime of moral turpitude.

■ Although former section 12280 was not intended to be a strict liability offense, it may be violated by criminal negligence. (*In re Jorge M., supra*, 23 Cal.4th at pp. 884–887.) Possession of an assault weapon is a serious crime, punishable by either up to one year of imprisonment in jail or state prison. (Former § 12280, subds. (a), (b).)

■ Defendant's conviction of this charge required, at the least, that he was in knowing possession of a weapon with the characteristics that made it an assault weapon and as such made it particularly dangerous to human life. (Former § 12280, subd. (b); see *In re Jorge M., supra*, 23 Cal.4th at p. 885.) We thus conclude that under *Castro*'s least adjudicated elements test, the mere possession of such a weapon demonstrates a " 'general readiness to do evil.' " (*Castro, supra*, 38 Cal.3d at p. 315.) We further conclude that the trial court did not err in permitting defendant's impeachment with his prior conviction for possession of an illegal assault weapon.

B. *Cultivation of marijuana*

Defendant contends that the trial court erred in allowing the prosecution to impeach his testimony with his former conviction under Health and Safety Code section 11358, unlawful planting or cultivation of marijuana. Defendant argues that because the least adjudicated element of the offense is the cultivation or processing of any amount of marijuana, and thus could be as little as necessary for personal use, a violation of Health and Safety Code section 11358 is comparable to simple possession of marijuana, which is not a crime of moral turpitude. (See *Castro, supra*, 38 Cal.3d at p. 317 [simple heroin possession not a crime of moral turpitude].)

■ The question here is whether simple cultivation of marijuana is necessarily an act involving moral turpitude. Again, neither party nor we have found authority directly on that point; however, we find respondent's analysis compelling. The possession or transportation of less than 28.5 grams of

marijuana is punishable by a $100 fine, whereas the possession or transporting of more than 28.5 grams is punishable by a $500 fine, up to six months in jail, or both. (Health & Saf. Code, § 11357, subds. (b), (c).) The possession of concentrated cannabis can result in a fine, jail term, or a state prison term. (Health & Saf. Code, § 11357, subd. (a).) However, "[e]very person who plants, cultivates, harvests, dries, or processes any marijuana or any part thereof, except as otherwise provided by law, shall be punished by imprisonment [in the state prison]." (Health & Saf. Code, § 11358.) As respondent argues, the fact that cultivation of marijuana remains a felony punishable by state prison, while other possession offenses carry lesser penalties, indicates that the Legislature has determined that cultivation of marijuana remains more contemptible than simple possession.

To illustrate this point, respondent cites *People v. Rogers* (1971) 5 Cal.3d 129, 136–137 [95 Cal.Rptr. 601, 486 P.2d 129], which concluded that the greater penalty for transportation signaled legislative concern for a greater potential for trafficking. "Anything that is related to trafficking is more serious than possessing. [Citations.]" (*People v. Navarez* (1985) 169 Cal.App.3d 936, 949 [215 Cal.Rptr. 519].) As we observed in *People v. Cina* (1974) 41 Cal.App.3d 136, 140 [115 Cal.Rptr. 758], the defendant was properly found ineligible for diversion because the "cultivation of marijuana is often associated with trafficking in narcotics and normally carries a higher degree of culpability than simple possession . . . ."[5] It follows that the more severe penalty for those who cultivate marijuana was deemed necessary to restrict sources of supply in order to reduce this potential for trafficking.

■ Crimes related to trafficking involve moral turpitude. (See, e.g., *Castro, supra*, 38 Cal.3d at p. 317 [possession of heroin for sale]; *People v. Standard* (1986) 181 Cal.App.3d 431, 435 [226 Cal.Rptr. 62] [possession of marijuana for sale]; *People v. Navarez, supra*, 169 Cal.App.3d at p. 949 [transporting narcotics].) We conclude that cultivation of marijuana, with its potential for promoting drug trafficking, demonstrates a readiness to do evil, and is thus also a crime of moral turpitude. The trial court did not err in permitting defendant's impeachment with his prior conviction of Health and Safety Code section 11358.

II. *No Prejudice*

■ We have concluded that the admission of defendant's prior convictions was not error, as both offenses were crimes of moral turpitude. We also

---

[5] Defendant cites a noncriminal case predating *Castro*, in which the cultivation of marijuana was found not to be a crime of moral turpitude. (See *Board of Trustees v. Judge* (1975) 50 Cal.App.3d 920, 922–924 [123 Cal.Rptr. 830].) We find the reasoning of that case to be inapplicable, as it involved teacher discipline and the determination of moral turpitude turned on the facts, not the elements as required by *Castro, supra*, 38 Cal.3d at page 306.

conclude that had the court erred, it would not have resulted in prejudice requiring reversal. To assess prejudice we review the entire record to determine whether it is reasonably probable that a result more favorable to defendant would have occurred in the absence of the admission of the prior convictions. (*Castro, supra,* 38 Cal.3d at p. 319, citing *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Defendant contends that without evidence of the two convictions and the prosecutor's argument that the cultivation offense was the "same thing," the jury might have believed his compassionate use defense. (See Health & Saf. Code, § 11362.5, subd. (d).) Defendant also argues that without the two convictions, the jury might have believed his disclaimer of knowledge of stolen tools or destroyed serial numbers.[6]

Defendant argues that this was a close case, as demonstrated by the jury's nearly five hours of deliberation and quick verdict after further instruction on intent. We disagree. It was not a close case. Defendant admitted that the marijuana plants were his. It was defendant's burden to produce evidence of a doctor's recommendation that he use marijuana medicinally. (*People v. Mower* (2002) 28 Cal.4th 457, 477 [122 Cal.Rptr.2d 326, 49 P.3d 1067]; Health & Saf. Code, § 11362.5, subd. (d).) Defendant did not do so. Rather, he testified that he discussed it with his doctor and expressed his opinion that he was qualified to use marijuana. There was no evidence that his doctor recommended it. There was more marijuana than necessary for personal use, and defendant's claim of four or five severe headaches per week was not substantiated by any medical evidence.

Nor was this a close case with regard to the stolen tools or destroyed serial numbers. Defendant acknowledged that all the tools on the premises were his and that he was selective about things stored by others on his property, but then disclaimed any knowledge of the stolen tools or the burglar tools. Defendant claimed to have receipts for the generators, a rototiller, saws, and sprayers, but claimed he could not produce them because the police took them. Defendant admitted grinding down the top of the generator handle,

---

[6] Although defendant points to the prosecutor's argument that the two offenses were crimes of moral turpitude and showed a readiness to do evil as demonstrating prejudice, these are separate issues. The prosecutor's descriptions of the prior crimes were not proper argument and were irrelevant to the jury's determination of credibility. (See *People v. Koontz* (2002) 27 Cal.4th 1041, 1082–1083 [119 Cal.Rptr.2d 859, 46 P.3d 335]; *People v. Gray* (2007) 158 Cal.App.4th 635, 640 [69 Cal.Rptr.3d 876].) Thus, had defendant objected, the trial court would have excluded the argument and admonished the jury to disregard it. Defendant did not object, and other than claiming in his reply brief that the argument presented a "Hobson's choice" for defense counsel, he makes no legal argument here against forfeiture. Defendant has thus forfeited any claim of reversible misconduct. (See *People v. Clark* (2011) 52 Cal.4th 856, 960 [131 Cal.Rptr.3d 225, 261 P.3d 243].)

explaining that he intended to paint all the tools yellow and black to identify them. However, of the 80 tools defendant owned, it was the only tool he had prepared for painting.

Moreover, defendant's overall testimony did not inspire confidence in his credibility. In direct contradiction to the testimony of three witnesses, defendant claimed there were only eight marijuana plants. In addition, defendant provided contradictory testimony, first that the floor sander had labels, then that it had no labels, that it should have had serial numbers on the side, and that the prosecutor was referring to the wrong part of the machine. Defendant denied removing the serial numbers from the sander, and testified the sanded area was in that condition when he bought the machine. Defendant then stated that Sergeant Machanic was incorrect in testifying that the sanded area was where the serial numbers should have been, because there was still a serial number on the machine. Defendant added, "I don't know what he said. I'm telling you, there's no serial number." Defendant later testified again that the serial number was on the side of the sander, but there was no photograph showing it. When defendant was shown the photograph of another tool with a number beginning "K-4" and asked whether that was a serial number, defendant evasively replied that it could be anything; that it could be a birthday.

The ammunition was found with envelopes addressed to defendant and two books with defendant's name on them. Defendant admitted to Sergeant Machanic that the ammunition belonged to him, explaining that it was for firearms he no longer had. In his testimony, however, defendant denied that Sergeant Machanic had asked him about the ammunition. When asked whether he was aware on July 29 that he was not allowed to have ammunition, defendant refused to answer, invoking the Fifth Amendment. When the trial court explained he had no such right and ordered him to answer, he said, "Not at the time, no." When asked whether a judge had told him he was not allowed to have guns, he again invoked the Fifth Amendment and refused to answer. Ordered to answer the question, defendant said, "I can't lie. I can't do it. I can't do it." Finally, after the trial judge posed the question, defendant answered it, denying that he had been told not to possess ammunition. Defendant himself did much harm to his own credibility.

Where the prosecution's case is strong and defendant's testimony implausible, any Castro error will be deemed harmless. (*People v. Lang* (1989) 49 Cal.3d 991, 1011–1012 [264 Cal.Rptr. 386, 782 P.2d 627].) Such is the case here. Had the prior convictions been excluded, defendant's contradictory and evasive testimony would still have harmed his credibility to the extent that there was no reasonable probability of a more favorable outcome.

## DISPOSITION

The judgment is affirmed.

Boren, P. J., and Doi Todd, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 29, 2012, S203523. Werdegar, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.