Filed 10/22/13  P. v. Wilson CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B239940 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA082556) |
| v. | |
| RANDALL D. WILSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven R. Van Sicklen, Judge.  Affirmed.

Suzann E. Papagoda, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

Randall D. Wilson appeals from his conviction of being a felon in possession of body armor in violation of former Penal Code section 12370, subdivision (a)[1]. His sole contention on appeal is that he was prejudiced by the trial court's error in admitting evidence that he brandished a weapon on a prior occasion. We find no error and affirm.

**FACTUAL AND PROCEDURAL SUMMARY**

Los Angeles County Sheriff's Deputies Ludy Orellano and Anthony Maldonado were on patrol in the early morning hours of October 15, 2011. They saw a large group of men and women in front of a liquor store. Some of the men were raising their hands and lifting their shirts. The officers made a U-turn to investigate whether a fight was about to occur. When they approached the location, about eight of the men started running eastbound onto 94th Street. The officers followed the running men and activated the spotlights on their patrol car. They saw one of the men, later identified as appellant, making furtive movements to his waistband and to his chest. As they came closer, Deputy Orellano saw appellant move his hands to his waistband. Appellant started to take off his shirt, which drew the deputy's attention because of concern that he was reaching for a weapon. When appellant took off his shirt, Deputy Orellano saw that he was wearing a blue ballistic vest. He saw appellant throw the vest over the wall west of a house.

Appellant stopped in front of the house where other men had gathered. Deputy Orellano had a clear view of appellant. He was sure appellant was the man in the ballistic vest. Deputy Maldonado was 100 percent positive that appellant was the man he saw wearing body armor. The two deputies detained all the men, including appellant. Deputy Orellano retrieved the ballistic vest that appellant had thrown over the fence. Appellant was arrested.

---

[1] Statutory references are to the Penal Code unless otherwise indicated. Former section 12370, subdivision (a) is now codified as section 31360 without substantive change. (Stats. 2010, ch. 711, § 6.)

Appellant was charged with being a violent felon in possession of body armor, in violation of section 12370, subdivision (a). The information also alleged that appellant had suffered one prior serious or violent felony conviction within the meaning of the Three Strikes law, sections 1170.12, subdivisions (a) through (d) and 667, subdivisions (a) through (i). Appellant pleaded not guilty and admitted the prior felony conviction allegation. He testified in his own defense and presented another defense witness. The jury convicted appellant as charged. Appellant was sentenced to two years in state prison, doubled to four years because of the prior strike conviction. He was granted 167 days of presentence credit. He filed a timely appeal.

## DISCUSSION

Appellant's only argument on appeal is that the trial court erred by admitting evidence of his prior conviction for brandishing a firearm. He contends there is an open question whether this offense is a crime of moral turpitude admissible to impeach his testimony. Even if it is, he argues, the evidence was not admissible under Evidence Code section 1101, subdivision (b).

During trial, defense counsel informed the court that her client planned to testify, and requested a discussion about the use of his prior criminal record to impeach him. The prosecutor said he intended to ask appellant about his robbery conviction, to which the defense had stipulated, and also a misdemeanor conviction for brandishing a firearm in a menacing manner. The court said: "I think he can also be asked about brandishing a firearm. It's helpful to the jury in terms of he might be in possession of a bulletproof vest." Defense counsel questioned whether the 2009[2] brandishing offense constituted a crime of moral turpitude. The prosecutor argued: "For brandishing a firearm, the question is the underlying circumstances. In this case, the court has the probation report in front of the court. But on the defendant's CCHRS printout, it indicates that Penal

_____

[2] The probation report reflects that appellant was arrested for this offense in July 2009 and that the disposition date was December 2009.

Code section 245, subdivision (a)(2), assault with a firearm was dismissed and that the defendant then pled to a Penal Code section 417 (A)(2), exhibiting a firearm. [¶] So I believe the underlying circumstances were that he would have brandished it in a menacing manner. Doing something that is—violence towards another individual is something that is a crime of moral turpitude. And, I believe, when it comes to brandishing a firearm, it's within the court's discretion as to whether that crime would come in. But I believe it's also relevant here for the reason the court indicated."

Defense counsel objected, arguing that appellant "could have [been] charged [ ] with anything, but he was not convicted" of assault with a deadly weapon. She contended that either the prosecutor could use the fact of the brandishing conviction, or the underlying conduct, but not both. The court ruled the conduct was relevant. It reasoned: "[Y]ou could ask somebody in this kind of a case where you're wearing—accused of wearing a bulletproof vest, 'have you ever possessed a firearm?' and if he says no, you can bring this up to impeach him." Defense counsel questioned the court's reasoning: "Just because you possess a bulletproof vest or you possess a firearm does not mean that you possess one or the other." The court ruled that the brandishing conviction was relevant and would be helpful to the jury.

On direct examination, defense counsel asked appellant if he had been convicted of brandishing a weapon. He said he had been, at age 19. Counsel then asked appellant who he was with on the date of the current incident. Appellant apparently misunderstood because his reply concerned the brandishing offense: "Allegedly, me and two other guys jumped out of a car and allegedly said, 'Where you guys from?'" Defense counsel resolved the confusion and continued with her direct examination concerning the present offense. On cross-examination, appellant was asked whether one of his prior convictions was for brandishing a gun. Appellant said: "It was allegedly that I brandished a weapon. It's in the report. It's no weapon found. I never—it doesn't say anything about me having a weapon. So I went to trial. I actually had to plead guilty to it to go home. And, yes, I plead guilty to it to get out of here." He said that allegedly, the weapon brandished was a gun.

4

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352. (*People v. Wheeler* (1992) 4 Cal.4th 284, 290–296 [Prop. 8 allows impeachment with conduct amounting to a misdemeanor offense]; see also *People v. Mickle* (1991) 54 Cal.3d 140, 168 [jailhouse informant could be impeached with evidence he had threatened witnesses in his own case].) [Fn. omitted.]" (*People v. Clark* (2011) 52 Cal.4th 856, 931 (*Clark*).) The Supreme Court explained that evidence of past misconduct must constitute moral turpitude to be admissible for impeachment purposes. (*Ibid.*) Once that requirement is satisfied, Evidence Code section 352 gives the trial court broad latitude in determining whether impeachment with such evidence should be allowed. (*Ibid.*)

"When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify. [Citations.] . . . As we have advised, 'courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value.' [Citation.]" (*Clark*, *supra*, 52 Cal.4th at pp. 931–932.)

We ordinarily uphold the trial court's exercise of discretion in admitting impeachment evidence. (*Clark*, *supra*, 52 Cal.4th at p. 932.) The California Supreme Court has recognized that a misdemeanor offense is less probative of moral turpitude or dishonesty than is a felony. (*Ibid.*) Evidence of misdemeanor conduct showing moral turpitude is admissible as impeachment evidence while evidence of misdemeanor convictions is not. (*People v. Roberts* (2011) 195 Cal.App.4th 1106, 1131–1132, citing *People v. Lopez* (2005) 129 Cal.App.4th 1508, 1522–1524; see also *People v. Cadogan* (2009) 173 Cal.App.4th 1502, 1507, 1514 (*Cadogan*).) "'Past criminal conduct involving moral turpitude that has some logical bearing on the veracity of a witness in a criminal

proceeding is admissible to impeach . . .' a witness. (*People v. Harris* (2005) 37 Cal.4th 310, 337.)" (*Id*. at p. 1514.)

Here the trial court did not abuse its discretion in admitting evidence of appellant's conduct in brandishing a weapon as a crime of moral turpitude to impeach his credibility. Section 417, subdivision (a)(2) provides: "Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner, or who in any manner, unlawfully uses a firearm in any fight or quarrel . . ." has committed the offense of brandishing a weapon. "Crimes involve moral turpitude when they reveal dishonesty, a '"general readiness to do evil,"' '"bad character,"' or 'moral depravity.' [Citation.] Such crimes involve an act of baseness, vileness, or depravity in the private and social duties which a person owes to others or to society in general, contrary to the accepted and customary rule of right and duty between people. [Citation.]" (*People v. Gabriel* (2012) 206 Cal.App.4th 450, 456 [finding possession of an illegal assault weapon in violation of section 12280, subdivision (b) to be crime of moral turpitude].) Conduct involving violence, menace or threats has been found to constitute a crime of moral turpitude. (*People v. Lepolo* (1997) 55 Cal.App.4th 85, 90. (*Lepolo*).)

The court in *Lepolo* found that the conduct of the defendant in a prior incident to be brandishing, a crime of moral turpitude. In that incident, the defendant raised a machete over his head, waived it at a police officer, and said "'I want that officer.'" (*Lepolo*, *supra*, 55 Cal.App.4th at p. 88.) After his arrest, the defendant told the officers that he "'was going to whack [the officer's] head off'" and that "'[m]aybe next time I'll use a nine,' which the interrogating officer took to mean a 9-millimeter handgun." (*Id*. at pp. 88–89.)

Here, appellant said he and his friends got out of a car and issued a recognized gang challenge by stating "'Where you guys from?'" He pled guilty to exhibiting a handgun in that incident, establishing his possession of a firearm. We are satisfied that this constituted conduct involving menace or threats sufficient to constitute a crime of

6

moral turpitude. Next we determine whether admission of this evidence was proper under Evidence Code section 352.

The court concluded that the evidence would be helpful to the jury in determining guilt on the present charge of possession of body armor. Appellant argues that the brandishing evidence had little bearing on his veracity and that the evidence against him was not overwhelming. The trial court has wide latitude in determining whether the evidence was admissible under Evidence Code section 352. (*Clark*, *supra*, 52 Cal.4th at p. 931.) Credibility was the primary issue in this case. As we have discussed, a crime of moral turpitude bears on that issue. Both sides focused on the credibility of the witnesses in closing argument. But the prosecutor did not dwell on the brandishing conviction, mentioning it only once in rebuttal. Under these circumstances, we find no abuse of the trial court's wide discretion in admitting the evidence.

Appellant suggests the trial court should have instructed the jury, sua sponte, with a limiting instruction on the use of the prior brandishing evidence. Absent such an instruction, he contends there is no way to know how the jury interpreted and applied the evidence. A similar argument was rejected by the Supreme Court in *People v. Cottone* (2013) 57 Cal.4th 269, 293.) In that case, the court addressed how the jury evaluates evidence admitted under Evidence Code section 1108. It reasoned: "We have long recognized that 'the trial court ordinarily has no sua sponte duty to instruct the jury as to the admissibility or use of other crimes evidence.' [Citations.] This principle is consistent with [Evidence Code] section 355, which provides that the trial court, 'upon request,' shall instruct the jury about evidence admitted for a limited purpose." (*Ibid.*) The same reasoning applies here. The trial court did not have a sua sponte duty to give a limiting instruction on the use of the prior crimes evidence.

Appellant also argues that evidence of his prior offenses is inadmissible under Evidence Code section 1101. But the restriction in that statute on the use of "character evidence has no application when the evidence is offered on the issue of a witness's credibility. [Citation.]" (*People v. Abel* (2012) 53 Cal.4th 891, 928.) The Supreme Court explained that "subdivision (c) of Evidence Code section 1101 expressly allows the

7

admission of evidence for that purpose."[3]  (*Id*. at p. 928.)  Appellant's arguments under this statute are not well taken.

## DISPOSITION

The judgment of conviction is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                EPSTEIN, P. J.

We concur:


     WILLHITE, J.


     SUZUKAWA, J.

---

[3] Evidence Code section 1101, subdivision (c) provides:  "Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

8