Filed 6/4/14  P. v. Raygoza CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICARDO RAYGOZA,<br><br>    Defendant and Appellant. | H038662<br>(Monterey  County<br>Super. Ct. No. SS092057A) |

A jury found Ricardo Raygoza (appellant) guilty of six counts of committing a lewd or lascivious act on a child under the age of 14 (Pen. Code, § 288, subd. (a), count one—victim Jane Doe I, counts six, seven, eight and nine—victim Jane Doe II, count 10—victim Jane Doe III),[1] two counts of committing a lewd or lascivious act on a child over the age of 14 or 15 where the defendant is 10 years or more older than the victim (§ 288, subd. (c)(1)[2], counts two and three, victim Jane I) two counts of annoying or molesting a child (§ 647.6, counts four and five—victim Jane I).  As to counts one, six, seven, eight, nine and 10, the jury found that appellant had committed the offenses on more than one victim.

---

[1]    We refer to the victims in this case as Jane Does to protect their anonymity.  For ease of reading we will refer to them as Jane I, Jane II and Jane III.

[2]    All unspecified section references are to the Penal Code.

Subsequently, the court sentenced appellant to the aggregate term of 30 years to life consecutive to the indeterminate term of two years eight months. (§ 667.61, subd. (c)(5).) Appellant filed a timely notice of appeal.

On appeal, appellant raises six issues. First, appellant contends that his conviction on count one must be reversed because the trial court erred in allowing the prosecution to amend the information after the close of evidence. Second, he argues that a jury instruction given in this case—CALCRIM No. 1110— unconstitutionally negated the need for the jury to find all elements of the section 288, subdivision (a) offenses beyond a reasonable doubt. Third, he contends that a modified version of CALCRIM No. 1191 that was given in this case deprived him of the presumption of innocence and his due process right to a guilt determination based on proof beyond a reasonable doubt. Fourth, he asserts that the court abused its discretion and violated his due process rights when it admitted evidence of his prior violent acts against his stepchildren and girlfriend. Fifth, he contends that the prosecutor committed misconduct during closing argument by vouching for the truthfulness of the witnesses. Finally, he argues that the cumulative effect of all the aforementioned errors was prejudicial and violated his due process rights. For reasons that follow, we affirm the judgment.

*Evidence Adduced at Trial*

Appellant lived with his girlfriend and her four children.[3] Appellant was not the biological father of his girlfriend's children. These children, Jane I, Jane II, and Jane III and their brother Eric had lived with appellant since they were young. Jane I the oldest daughter was 21 years younger than appellant.

*Jane I—Counts One through Six*

Jane I testified that when she was 11, while the family was living in a house on Del Monte, appellant entered her bedroom while she was lying on the bed watching

---

[3]     Appellant and his girlfriend had four more children with whom they lived; appellant was their biological father.

2

television with her brother Eric. Appellant got on top of her and starting "going up and down," pressing his pelvic area against her stomach. At the time, Jane I thought that appellant was playing; she did not tell anyone what had happened. It was only as she grew older that she realized that appellant was not playing.

When the Del Monte house burned down, the family moved into a hotel before moving to another house. Appellant admitted to the police that while the family was at the hotel he touched Jane I on the inner thigh, leg and foot.

When the family moved to a house on Ramona, Jane I was about 14 years old; appellant would come to where she was sleeping at night and touch her while other family members were sleeping. This happened more than once and continued when she turned 15, 16, and 17. On one occasion, Jane I watched appellant crawl up to her bed and felt him slowly rub her thigh back and forth in a way that felt sexual. Another time she awoke to hear the sound of someone trying to open her bedroom door, which she had locked to prevent appellant from coming in. When appellant saw that Jane I was awake he left the room. On yet another occasion, Jane I woke up to find appellant rubbing her on her leg. When she told him to stop appellant ran away.[4]

At one house, Jane I slept in the same room as her brother Eric. On one occasion after she had locked the bedroom door, appellant tried to open the door using a screwdriver. When Jane I heard the noise she opened the door; appellant pulled her out of the room, pushed her against the hallway wall, grabbed her arms with his hands and kissed both sides of her neck for about five minutes. Jane I screamed and struggled. Appellant threatened to hurt Jane I's mother if she continued to scream. Jane I believed appellant because she had seen appellant hit her mother before.

---

[4]     It appears that the family moved quite often and some of these events happened in different houses or apartments.

3

When the family moved to an apartment on Laurel Street, Jane I shared a bedroom with Eric and Jane II and III. When Jane I was about 16, appellant came into the room, lifted Jane I's blankets and tried to get into bed with her. Jane I kicked him and he left.

When Jane I was approximately 16 she was just about to get into the shower when she noticed a pencil coming through the wall of the bathroom; appellant's closet was on the other side of the wall. Jane I told her mother about the hole and they covered it with putty; soon it became uncovered. Jane I put toilet paper into the hole, but appellant pushed the paper out with a pencil while Jane I was using the toilet.

When Jane I was about 17, appellant asked her for her cellular telephone while she was sitting on the couch. When Jane I handed it to him, appellant touched her breast. When she responded by walking away, appellant touched her "butt" and whispered "Mamacita." Appellant licked his mouth at Jane I in a similar way to when he licked his mouth at Jane I's aunt when he would comment on the size of her breasts.

After Jane I turned 17, appellant began exposing his penis to her. On one occasion while Jane I was watching television in her room she saw appellant looking at her from the bathroom. The door to her room and the bathroom door were open. Appellant was facing her with his boxers down and his penis exposed. Appellant grabbed his penis; Jane I covered her eyes. On another occasion, appellant opened the door to the bedroom Jane I shared with her siblings when they were all in the room. When Jane I turned around to see who had opened the door, appellant pulled down his boxers exposing his penis.

*Jane II—Counts Six through Nine*

When Jane II was 12, appellant entered her bedroom at night and touched her vagina under her underwear. Jane II explained she woke up feeling as if she needed to go to the bathroom and screamed when she saw appellant standing touching her. The scream woke her siblings and appellant ran away. On another occasion when Jane II was

4

11 years old she was in a car with appellant and some of her siblings; appellant touched her vagina over her clothes for about 10 seconds. Jane II told him to stop, but appellant said he was just playing. Appellant also touched her chest under her shirt, again, for about 10 seconds. On a different occasion while Jane II was watching television in the living room of the Laurel Street apartment, appellant touched her on the chest under her shirt and held his hand there for about 10 seconds. Jane II remembered another incident that happened while they were playing hide and seek. While Jane II was on the back of the couch trying to jump out of the window appellant touched her on her "boobs." Appellant pulled Jane II down and touched her. Jane II testified that appellant was not supposed to do that. Jane II pushed appellant and he stopped.

*Jane III—Count 10*

When Jane III was about 10 or 11 appellant came over to Jane III while she was watching television and began wrestling with her. Suddenly, appellant put his hand under her clothes and touched her breasts. Jane III testified that it was not an accident. She knew that appellant had touched her sisters.

Eventually Jane I, II and III told their mother about the touching. Their mother confronted appellant and she asked appellant to leave; he responded by hitting her on the nose three times with his forehead and threatening to take the children with him. When she threatened to call the police, appellant took away her cellular telephone.

Eric confirmed that a person could see into the bathroom from appellant's closet using the peephole; he told his mother about this fact.

Eventually, Jane I turned to a school counselor for help and the counselor contacted the police. All the children were placed in a foster home.

The police interviewed appellant. He admitted touching Jane I's breasts and buttocks and that he had rubbed her inner thigh while she was sleeping. He admitted touching Jane II on the vagina over her clothes and that he made the peephole in the bathroom with a pencil so he could look at Jane I while she was naked. Appellant

5

admitted that he got "turned on" when he looked at Jane I or touched her. Appellant confessed to kissing Jane I while she was asleep and caressing Jane I on the thigh while the family was staying at a hotel. He admitted touching Jane II by pulling down her underwear while she was asleep and touching Jane III on the buttocks. However, he denied touching Jane II's vagina while they were in a car or climbing on top of Jane I. Appellant wrote an apology letter asking his step-daughters to forgive him and said that he was "sorry for everything." A videotape of appellant's interview was played for the jury.

*Discussion*

*Amendment to the Information*

*Background*

At the preliminary hearing in this case, none of the children testified. However, the police officer that interviewed Jane I and Jane II testified to what they had told him. The officer stated that Jane I told him that the first time that appellant touched her was in 2005 and that appellant climbed on top of her while she was lying on her back and appellant was moving as he was lying on top of her. An amended information charged appellant in count one with committing a lewd or lascivious act on Jane I, a child under the age of 14 "On or about June 1, 2005 through August 23, 2005." Jane I's date of birth was August 23, 1992. Thus, during the aforementioned time period Jane I would have been 13 years old. However, at trial, Jane I testified that the incident where appellant climbed on top of her happened when she 11 years old. This was the only incident that she testified happened while she was less than 14 years of age. Accordingly, after the close of all the evidence, the prosecution filed a motion to amend the information as to counts one though nine to change the dates they were alleged to have occurred. As to count one, the prosecution sought to change the date for count one as occurring between "8/24/2003 thru 8/23/2004. " Defense counsel did not object. Accordingly, the court permitted the prosecution to so amend the information. The jury found appellant guilty

of count one and the verdict stated that the offense was committed "on or about August 24, 2003 thru August 23, 2004. "

Appellant argues that his conviction on count one must be reversed because the amendment to the information allowed the jury to convict appellant on the basis of an incident that was not disclosed at the preliminary hearing in violation of his Sixth and Fourteenth Amendment rights to notice.

Appellant has forfeited this claim by failing to object to the amendment at trial. (*People v. Cole* (2004) 33 Cal.4th 1158, 1205 [finding that the defendant failed to preserve the claim based on right to notice under Sixth and Fourteenth Amendment because he failed to object at trial, move for a continuance, or move to reopen the taking of evidence]; *People v. Burnett* (1999) 71 Cal.App.4th 151, 178-179, [explaining that even where prosecution of felony not subjected to finding of probable cause had constitutional implications a failure to object at trial forfeits the assertion of error on appeal]; *People v. Newlun* (1991) 227 Cal.App.3d 1590, 1604 [waiver of due process notice argument where defendant convicted of offense not shown at preliminary hearing].)  Having failed to claim surprise or to request a continuance, appellant has forfeited any objection to the amendment to the information on the ground he did not have adequate notice of it.

Recognizing that he may have forfeited this claim, appellant contends that his counsel was constitutionally ineffective in failing to object.

A defendant claiming ineffective assistance of counsel must satisfy a two-part test requiring a showing of counsel's deficient performance and prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)  As to deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness" as measured against "prevailing professional norms."  (*Id.* at p. 688.) "Judicial scrutiny of counsel's performance must be highly deferential," a court must evaluate counsel's performance "from counsel's perspective at the time" without "the

7

distorting effects of hindsight," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Id.* at p. 689.)

The prejudice prong requires a defendant to establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, *supra*, 466 U.S. at p. 694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Ibid.*) "In assessing prejudice under *Strickland,* the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. [Citations.] Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different. [Citation.] This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland* 's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' [Citation.] The likelihood of a different result must be substantial, not just conceivable. [Citation.]" (*Harrington v. Richter* (2011) ——U.S. ——, ——, 131 S.Ct. 770, 791–792.)

We point out that counsel is not required to make futile objections or advance meritless arguments in order to avoid a claim of ineffective assistance. (*People v. Diaz* (1992) 3 Cal.4th 495, 562; *People v. Jones* (1979) 96 Cal.App.3d 820, 827.) Here, counsel could have considered an objection to the amendment of the information pointless because he had notice before trial of the evidence upon which count one was based.

The general framework within which criminal pleadings are amended is statutorily derived and has remained constant since 1911. (*People v. Superior Court* (*Alvarado*) (1989) 207 Cal.App.3d 464, 472.) Section 1009 authorizes amendment of an information at any stage of the proceedings provided the amendment does not change the offense

charged in the original information to one not shown by the evidence taken at the preliminary examination. (*People v. George* (1980) 109 Cal.App.3d 814, 818–819.)

As pertinent here, the issue is whether the amendment to the information after all the evidence was in charged crimes different than those alleged in the original amended information and shown by the evidence at the preliminary hearing, thus depriving appellant of his due process right to notice of the allegations.

All of the pleadings consistently charged appellant in count one with committing a lewd or lascivious act against Jane I, a child under the age of 14 years old.

"Under the generally accepted rule in criminal law a variance [in pleadings] is not regarded as material unless it is of such a substantive character as to mislead the accused in preparing his defense . . . ." (*People v. Williams* (1945) 27 Cal.2d 220, 226; see also *People v. Pitts* (1990) 223 Cal.App.3d 606, 905-907.) Furthermore, "[n]o accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits." (§ 960.)

This case is in contrast to *People v. Burnett* (1999) 71 Cal.App.4th 151, where a firearm possession conviction was overturned because it was based on a totally distinct and separate incident of possession from that shown by the evidence at the preliminary hearing. (*Id*. at pp. 155-156, 169.) Similarly, it is in contrast to *Gray v. Raines* (9th Cir.1981) 662 F.2d 569, where the defendant was charged in the information with forcible rape. After the defendant put on a defense that the victim consented to the conduct, the prosecution was allowed to amend the information to allege statutory rape. (*Id*. at pp. 570-573.) In reversing the conviction, the court concluded that the defendant's due process rights were violated because he did not have notice of the specific charge of which he was convicted, and his substantial rights were prejudiced. (*Ibid*.)

"The law is clear that, when it is charged that an offense was committed "on or about" a named date, the exact date need not be proved unless the time "is a material

ingredient in the offense" [Citation.]" (*People v. Starkey* (1965) 234 Cal.App.2d 822, 827.) In fact, when a defendant does not raise a specific alibi defense, the prosecution need only prove the act was committed before the filing of the information and within the period of the statute of limitations. (*People v. Fritts* (1977) 72 Cal.App.3d 319, 326; *People v. Aylwin* (1973) 31 Cal.App.3d 826, 841-842; *People v. Amy* (1950) 100 Cal.App.2d 126, 128.) The date change was not material to the charged offense in count one. Since appellant did not raise an alibi defense he was neither prejudiced nor misled, and the prosecution was only required to show a crime had occurred before Jane I's 14th birthday.

Contrary to appellant's assertions, the amendment did not prejudice appellant's ability to prepare and present his defense to the charge in count one as shown at the preliminary hearing and as originally alleged. Appellant denied climbing on top of Jane I at any time. The operative pleading under which appellant was convicted did not charge him with violating a different Penal Code section from that shown by the evidence at the preliminary hearing and alleged in the original amended information. Both pleadings were based on the same course of conduct, involving the same victim. Both pleadings dealt with the same underlying act—climbing on top of Jane I. Simply put, appellant was not presented with a moving target; he was fully aware of what he had to defend against. Plainly, appellant's substantial rights were not implicated.

*CALCRIM No. 1110*

Appellant argues that CALCRIM No. 1110 as given in this case unconstitutionally negated the need for the jury to find all elements of section 288, subdivision (a), beyond a reasonable doubt.

The court instructed the jury in this case pursuant to CALCRIM No. 1110 as follows:

"The defendant is charged in Counts 1, 6, 7, 8, 9 and 10 with committing a lewd and lascivious act on a child under the age of 14 years in violation of Penal Code Section

10

288 (a). To prove that the defendant is guilty of this crime the People must prove that, one, the defendant willfully touched any part of a child's body either on the bare skin or through the clothing. [¶] Two, the defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions or sexual desires of himself or the child. [¶] And, three, the child was under the age 14 years at the time of the act. *The touching need not be done in a lewd or sexual manner.* Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else or gain any advantage. Actually arousing, appealing to or gratifying the lust, passions, or sexual desires of the perpetrator or the child is not required." (Italics added.)[5]

In essence, appellant contends the inclusion of the phrase "[t]he touching need not be done in a lewd or sexual manner" in CALCRIM No. 1110 directly conflicts with the express statutory language defining the nature of the crime of lewd act upon a child (§ 288, subd. (a)), and negates an essential element of the crime.

Section 288, subdivision (a), provides: "[A]ny person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

CALCRIM No. 1110, as presented to the jury below, correctly stated the law regarding the crime of lewd act upon a child. The language of CALCRIM No. 1110 comports with the statutory elements of the offense of lewd or lascivious act on a child. In discussing the definition of a "lewd" act under section 288, the Supreme Court has

---

[5]    The language reflects the form of the instruction in effect at the time of trial in June 2012. (Judicial Council of California Criminal Jury Instructions, CALCRIM No. 1110 (February 2012 ed.) p. 928.)

11

explained the "statute itself declares that to commit such an act 'wilfully and lewdly' means to do so 'with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires' of the persons involved." (*In re Smith* (1972) 7 Cal.3d 362, 365 (*Smith*).) The focus of the offense is on the *intent* of the perpetrator. "[T]he courts have long indicated that section 288 prohibits *all* forms of sexually motivated contact with an underage child. Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act. [Citation.] '[T]he purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done . . . . If [the] intent of the act, *although it may have the outward appearance of innocence,* is to arouse . . . the lust, the passion or the sexual desire of the perpetrator [or the child,] it stands condemned by the statute . . . .' [Citation.]" (*People v. Martinez* (1995) 11 Cal.4th 434, 444 (*Martinez*).)

The sentence to which appellant objects correctly states the law and makes it plain to the jury the physical act of touching involved need not be seen as lewd or offensive *in and of itself.* Even a physical touching that may appear innocent, *if done with the requisite statutory intent,* can be found to be a prohibited act under section 288. "As suggested in [*In re*] *Smith,* we can only conclude that the touching of an underage child is 'lewd or lascivious' and 'lewdly' performed depending entirely upon the sexual motivation and intent with which it is committed." (*Martinez, supra,* 11 Cal.4th at p. 449; accord, *People v. Lopez* (1998) 19 Cal.4th 282, 289 [*any* touching of a child under the age of 14 violates section 288, subdivision (a), even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim.]; see also *People v. Sigala* (2011) 191 Cal.App.4th 695, 700–701 (*Sigala*) [holding same language in CALCRIM No. 1120 to be correct statement of law].) In short, CALCRIM No. 1110 does not improperly negate a statutory element of section 288.

Appellant's reliance on *People v. Cuellar* (2012) 208 Cal.App.4th 1067 is unavailing. *Cuellar* concerned the identical language in CALCRIM No. 1120. The court in *Cuellar* did not conclude the instruction was infirm, constitutionally or otherwise. *Cuellar* stated the language is "possibly confusing" (*Cuellar,* at p. 1071), but, reading the instructions as a whole and given the overwhelming evidence against the defendant, the language did not mislead the jury. (*Id.* at p. 1072.) Subsequent to *Cuellar,* and effective February 26, 2013, the Advisory Committee on Criminal Jury Instructions deleted the sentence from the form jury instructions for both CALCRIM No. 1110 and No. 1120. (Judicial Council of California Criminal Jury Instructions, CALCRIM Nos. 1110 and 1120 (February 2013 ed.) pp. 831, 842).)[6]

Nevertheless, the revision to CALCRIM No. 1110 does not alter our assessment of the validity of CALCRIM No. 1110 as given in this case. There has been no change in the well-established law that a violation of section 288 does not require an explicitly sexual or inherently lewd touching.

Appellant recognizes that *Cuellar*, *supra*, 208 Cal.App.4th 1067 is at odds with *Sigala*, *supra*, 191 Cal.App.4th 695, which held, in a prosecution under section 288.5, subdivision (a) (continuous sexual abuse of a child under 14), only the intent must be lewd and lascivious, not the touching itself. (*Id*. at p. 700.) Nevertheless, he argues that

---

[6]     The instruction in *Cuellar* stated in part: "Lewd or lascivious conduct is any willful touching of a child accomplished with the intent to sexually arouse the perpetrator or the child. The touching need not be done in a lewd or sexual manner." (*Cuellar*, *supra*, at p. 1070, italics omitted.) The defendant argued "the second sentence is inconsistent with the first and negates the requirement that the touching be done in a lewd or lascivious manner." (*Id.* at p. 1071.) *Cuellar* agreed the sentence, "[t]aken by itself," was capable of the defendant's interpretation and "[a]t best, it is unfortunate and possibly confusing," faulting *Sigala* 's analysis as failing to "focus on just what information the second sentence is designed to impart that is not already stated in the first sentence." (*Ibid.*) It urged revising the instruction to make "the two sentences . . . complement each other" and remove "any arguable inconsistency." (*Id.* at p. 1072.) Arguably, *Cuellar* 's critique of *Sigala* is inapplicable because the instruction in this case does not contain the first sentence found in those cases.

13

the analysis in *Sigala* suffers from a fatal problem because it relied on *People v. Lopez* (1998) 19 Cal.4th 282 and *People v. Martinez, supra,* 11 Cal.4th 434, both of which were decided before CALCRIM No. 1110 was created; and they parsed a CALJIC instruction that did not contain the language challenged here. We are not persuaded.

The fact that CALCRIM No. 1110 was not created at the time *Lopez* and *Martinez* were decided is irrelevant. The crux of appellant's argument is that there needs to be a lewd touching, that is the act itself must be inherently lewd; *Martinez* specifically rejected the argument section 288 is violated only if a defendant touches a child in an inherently lewd manner. (*People v. Martinez, supra,* 11 Cal.4th at p. 442.)

In sum, CALCRIM No. 1110 as given in this case correctly stated the law and did not remove an element of the offense from the jury's consideration.

*Modification to CALCRIM No. 1191*

Evidence Code section 1108 provides "a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Evidence Code section 1108 permits " ' "consideration of . . . other sexual offenses as evidence of the defendant's disposition to commit such crimes, and for its bearing on the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense." ' [Citation.]" (*People v. Soto* (1998) 64 Cal.App.4th 966, 984.)

The prosecution requested that the court instruct the jury with a modified version of CALCRIM No. 1191—the pattern jury instruction on how to consider propensity evidence—pursuant to this court's opinion in *People v. Wilson* (2008) 166 Cal.App.4th 1034. Defense counsel objected on the ground that "there can be a confusion with the jury . . . about the level of proof necessary in regards to using that propensity instruction." Defense counsel asserted "It doesn't tell [the jurors] as to what standard they must conclude." The court overruled the objection.

14

Accordingly, the court instructed the jury with a modified version of CALCRIM No. 1191 as follows: "If you decide that the defendant committed a charged offense listed above, you may, but are not required, to conclude from that evidence that the defendant was disposed or inclined to have the requisite specific intent or mental state for the charged crimes in Counts 1 through 10, or the lesser crimes of attempted lewd act upon a child or attempted child molest. And based on that decision also conclude that the defendant was likely to and did have the requisite specific intent or mental state for other charged offenses alleged in Counts 1 through 10, or the lesser crimes of attempted lewd act upon a child or attempted child molest. [¶] If you conclude from that evidence that the defendant committed a charged offense listed above, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of other charged offenses alleged in Counts 1 through 10 or the lesser offenses of attempted lewd act upon a child or attempted child molest. The People must still prove each element and allegation beyond a reasonable doubt."

Appellant contends that this modified instruction deprived him of the presumption of innocence and his due process right to a guilt determination based on proof beyond a reasonable doubt. We disagree.

We review de novo whether a jury instruction correctly states the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) Our charge is to determine whether the trial court " ' fully and fairly instructed on the applicable law.' [Citation.]" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088 (*Ramos*).) We look to the instructions as a whole and the entire record of trial, including the arguments of counsel. (*People v. Stone* (2008) 160 Cal.App.4th 323, 331.) Where reasonably possible, we interpret the instructions " 'to support the judgment rather than to defeat it.' " (*Ramos, supra*, 163 Cal.App.4th at p. 1088.)

Before deliberations began, the trial court instructed the jury with CALCRIM No. 220, on the presumption of innocence, the prosecution's burden of proving every element

15

of the charged crimes beyond a reasonable doubt, and the definition of the term "reasonable doubt."

The *Wilson* instruction reiterated the general reasonable doubt instruction (CALCRIM No. 220) and told jurors that the prosecution had the burden to prove every element of the charged offenses beyond a reasonable doubt. Under the *Wilson* instruction, if, and only if, the jury found that defendant committed a charged offense could it consider that evidence as evidence of a propensity to harbor the requisite intent for other charged offenses. Thus, in effect, the instruction permitted the jury to consider only the evidence of acts which it unanimously agreed appellant committed as evidence of propensity to harbor the requisite specific intent.

As appellant concedes, in *People v. Reliford* (2003) 29 Cal.4th 1007 (*Reliford*), the Supreme Court upheld the older instruction on the use of propensity evidence of uncharged offenses, CALJIC No. 2.50.01, against a due process challenge similar to the one appellant raises here. (*Id.* at pp. 1012–1016.) The *Reliford* court concluded that the language of former CALJIC No. 2.50.01, the predecessor to CALCRIM No. 1191, was not likely to mislead the jury concerning its use of uncharged offenses evidence in determining whether the prosecution met its burden of proving the elements of the charged crimes beyond a reasonable doubt. (*Ibid.*) Subsequent cases have held that CALCRIM No. 1191 is not materially different from CALJIC No. 2.50.01. Following *Reliford,* the courts in *People v. Schnabel* (2007) 150 Cal.App.4th 83 and *People v. Cromp* (2007) 153 Cal.App.4th 476 concluded that the 2006 version of CALCRIM No. 1191 was likewise not likely to mislead the jury concerning its duty to determine the defendant's guilt of the charged crimes beyond a reasonable doubt—given that there was "no material difference" between the language of former CALJIC No. 2.50.01 and the language of the 2006 version of CALCRIM No. 1191. (*People v. Schnabel, supra,* at p. 87; *People v. Cromp, supra,* at pp. 479–480; see also *People v. Anderson* (2012) 208

16

Cal.App.4th 851, 894–896 [reaching the same conclusion concerning the 2008 version of CALCRIM No. 1191].)

In *People v. Villatoro* (2012) 54 Cal.4th 1152 (*Villatoro*), the Supreme Court held "nothing in the language of [Evidence Code] section 1108 restricts its application to uncharged offenses," and "perceive[d] no reason why the Legislature would exclude charged sexual offenses from [the statute's] purview, and no indication that it did so." (*Id.* at p. 1164.) Accordingly, the *Villatoro* court approved an instruction similar to the instruction on charged misconduct as propensity evidence used in this case. (*Id*. at p. 1186.)

The modified instruction given in *Villatoro* provided: " 'The People presented evidence that the defendant committed the crime of rape as alleged in counts 2, 4, 7, 9, 12 and 15 and the crime of sodomy as alleged in count 14. These crimes are defined for you in the instructions for these crimes. [¶] If you decide that the defendant committed one of these charged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit the other charged crimes of rape or sodomy, and based on that decision also conclude that the defendant was likely to and did commit the other offenses of rape and sodomy charged. If you conclude that the defendant committed a charged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the defendant is guilty of another charged offense. The People must still prove each element of every charge beyond a reasonable doubt and prove it beyond a reasonable doubt before you may consider one charge as proof of another charge.' " (*Villatoro, supra,* 54 Cal.4th at p. 1167 & fn. 7.)

The *Villatoro* court concluded, "Unlike the standard pattern instruction CALCRIM No. 1191, which refers to the use of uncharged offenses, the modified instruction did not provide that the charged offenses used to prove propensity must be proven by a preponderance of the evidence. Instead, the instruction clearly told the jury that all

17

offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity.  Thus, there was no risk the jury would apply an impermissibly low standard of proof.  [Citation.]  Moreover, the court instructed the jury with CALCRIM No. 220, which defines the reasonable doubt standard and reiterates that the defendant is presumed innocent; it also explains that only proof beyond a reasonable doubt will overcome that presumption.  The modified version of CALCRIM No. 1191 did not impermissibly lower the standard of proof or otherwise interfere with defendant's presumption of innocence."  (*Id.* at pp. 1167–1168.)

Appellant attempts to distinguish *Villatoro* by arguing in that case "the modified propensity instruction expressly advised the jury that 'the People still must prove each element of every charge beyond a reasonable doubt and prove it beyond a reasonable doubt before you may consider one charge as proof of another.' "  He asserts that in the present case, the "modified CALCRIM No. 1191 [instruction] failed to make clear to the jury that the charged offenses had to be found true beyond a reasonable doubt before they could be used as evidence of propensity to commit any of the other crimes charged."  We are not persuaded by appellant's argument.

Plainly, the instructions given in this case, when taken together, informed the jury that in deciding if *appellant committed a charged offense* they had to find that he committed that offense beyond a reasonable doubt.  CALCRIM No. 220, which the court gave here twice, once before the jury received any evidence and once at the close of all the evidence before the jury started to deliberate, so informed them.  The modified version of CALCRIM No. 1911 reinforced this by informing the jury that the "People must still prove each element of every charge beyond a reasonable doubt."  There was no risk the jury would apply an impermissibly low standard of proof.[7]

---

[7]     Respondent asserts that where charged offenses are used as propensity evidence an offense need only be proven by a preponderance of the evidence.  Respondent cites to *Reliford*, *supra*, 29 Cal.4th at pages. 1009, 1012, to support this proposition.  However,

*Evidence of Appellant's Prior Bad Acts*

In limine, defense counsel moved the court to exclude any allegations or testimony regarding appellant's physical abuse of his stepchildren and their mother. Tentatively, the court ruled that the abusive acts were admissible given a proper foundation to show that the children were fearful of appellant and why they delayed in reporting the abuse. During trial, when Jane I testified that appellant almost killed her mother, defense counsel renewed his objection on the ground of relevance and as being more prejudicial than probative under Evidence Code section 352. The court overruled the objection and explained that the evidence was relevant to explain Jane I's state of mind and her delayed reporting and determined that the evidence was not more prejudicial than probative.

Jane I testified that she was afraid of appellant because when she was 12 appellant had almost killed her mother leaving bruises on her mother's neck and face. Further, Jane I said that she had seen appellant hit her sisters. Jane II testified that appellant would hit her and her siblings; when he was mad appellant would hit them with a belt. Jane III testified that on one occasion appellant hit her because his soccer team lost a game; and when she was four, appellant hit her brother and her sister. When she got mad at appellant, appellant hit her. The children's mother testified that appellant hit her nose with his head.

Appellant contends that the trial court abused its discretion in admitting his prior acts of violence and violated his due process rights under the Fourteenth Amendment.

the *Reliford* court was concerned with an uncharged sexual offense. (*Id*. at p. 1012.) Cases are not authority for propositions not therein considered. (*People v. Brown* (2012) 54 Cal.4th 314, 330.) Furthermore, *Villatoro* concluded there was no risk the jury would apply "an *impermissibly* low standard of proof" as the modified version of CALCRIM No. 1191 "clearly told the jury that all offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity." (*Id.* at p. 1168, italics added.) The *Villatoro* court's use of the word *impermissibly* convinces us that where charged conduct is used to show propensity or disposition the jury must find the charged conduct proved beyond a reasonable doubt before they can use it as propensity evidence.

"Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.] Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. '[Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125.)

Evidence is unduly prejudicial if it uniquely tends to evoke an emotional bias against the defendant "while having only slight probative value with regard to the issues." (*People v. Carter* (2005) 36 Cal.4th 1114, 1168.)

Evidence of prior acts of misconduct is admissible when it is relevant to prove some material fact at issue, other than the defendant's propensity to commit crimes. (Evid. Code, § 1101, subdivision (b).) The material facts referred to in Evidence Code section 1101, subdivision (b) are not limited to the specific facts enumerated in the statute. Rather, the facts at issue may include the state of mind of a witness or victim. (See *People v. Solis* (1985) 172 Cal.App.3d 877, 882–888.)[8]

Appellant argues that the complaining witnesses' state of mind and their delay in reporting were not elements of section 288, subdivision (a). Thus, their state of mind and delay in reporting were not relevant to the charges at hand. We agree that the witnesses' state of mind were not elements of section 288, subdivision (a).

---

[8] In *People v. Solis*, *supra*, 172 Cal.App.3d 877, a prosecution for rape, the defendant asserted that the alleged victim had consented to sexual intercourse with him. The court held that evidence of prior acts of violence committed by the defendant was admissible because the victim's knowledge of those incidents was relevant to determining whether she freely consented or consented out of fear of the defendant. (*Id.* at pp. 881, 885–886.)

However, evidence of appellant's violent acts that the girls had witnessed or of which they had knowledge had a tendency in reason to establish that they genuinely feared appellant, which in turn had a tendency in reason to explain their delayed reporting to someone outside the family and, undoubtedly, was relevant to their credibility. (See Evid. Code, §§ 210, 780, Cal. Law Revision Com. com., 29 B, Pt. 2 West's Ann. Evid. Code (1995 ed.) foll. § 780, p. 586; see also § 351.) Such evidence was highly relevant with respect to the girls' credibility, a key issue at trial, since the delay in reporting to anyone outside their family could be a basis for attacking their credibility in claiming that appellant had sexually molested them.

Appellant maintains that the evidence ruled admissible was "unduly prejudicial." For purposes of Evidence Code section 352, we reiterate that " 'prejudicial' is not synonymous with 'damaging,' but refers instead to evidence that ' "uniquely tends to evoke an emotional bias against defendant" ' without regard to its relevance on material issues. [Citations.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.) "In applying this statute we evaluate the 'risk of "*undue*" prejudice, that is, " 'evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues,' " not the prejudice "that naturally flows from relevant, highly probative evidence." ' [Citations.]" (*People v. Salcido* (2008) 44 Cal.4th 93, 148.)

Compared to the lengthy testimony detailing appellant's sexual molestation of his stepdaughters, the testimony regarding appellant's physical abuse was brief. Any prejudice from the evidence was not undue, but was merely the type that naturally flows from the nature of appellant's conduct. As such, the trial court committed no error in admitting the evidence. (cf. *People v. Harris* (1998) 60 Cal.App.4th 727, 737 [painting a person faithfully is not, of itself, unfair].)

Applying the deferential abuse of discretion standard, we conclude that the trial court's pretrial ruling was not an abuse of discretion. Since appellant interposed no due process objection below, his constitutional claim is cognizable on appeal only insofar as

21

he is arguing that any error in making the evidentiary ruling had the additional legal consequence of depriving him of due process. (*People v. Partida* (2005) 37 Cal.4th 428, 435–436; see Evid. Code, § 353.) Our rejection of the evidentiary claim also disposes of the due process claim. (See *People v. Boyer* (2006) 38 Cal.4th 412, 441, fn. 17; *People v. Cain* (1995) 10 Cal.4th 1, 33.)

*Alleged Prosecutorial Misconduct*

Appellant claims that the prosecutor committed misconduct by stating to the jury that the witnesses were telling the truth.

Specifically, appellant points to the following in support of his argument that the prosecutor was vouching for the truthfulness of the witnesses: "There's so much more evidence in this case to make [the] conclusion [that appellant is guilty]. But that ultimately in the end is your basic conclusion, because [Jane I] has been telling the truth." Later, the prosecutor stated "[Jane I]'s telling you she's being touched. She's telling the truth. You have to determine whether she's telling the truth or not. You get a credibility instruction. And there's absolutely no reason to disbelieve her." When referring to appellant's interview with the police, the prosecutor stated, "The value in this is it leaves you with an abiding conviction that everything is true. That the girls aren't making this up." Defense counsel objected to the first statement contemporaneously, but not to the remaining two statements. Later, the court made a record of defense counsel's objections to the prosecutor's argument.[9]

A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it "infects the trial with such unfairness as to make the

---

[9]     Respondent argues that appellant has forfeited his claims of prosecutorial misconduct to two of the three statements because he did not contemporaneously object and seek a curative jury admonition. We have discretion to reach the merits in order to forestall a potential future ineffective assistance of counsel claim. (Cf. *People v. Butler* (2003) 31 Cal.4th 1119, 1128; *People v. Blanco* (1992) 10 Cal.App.4th 1167, 1171–1173.)

conviction a denial of due process." (*People v. Morales* (2001) 25 Cal.4th 34, 44; accord, *Darden v. Wainwright* (1986) 477 U.S. 168, 181; *Donnelly v. DeChristoforo* (1974) 416 U.S. 637, 643.)  In other words, the misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." (*United States v. Agurs* (1976) 427 U.S. 97, 108.)  A prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." (*People v. Strickland* (1974) 11 Cal.3d 946, 955; accord, *People v. Farnam* (2002) 28 Cal.4th 107, 167.)

"A prosecutor may comment upon the credibility of witnesses based on facts contained in the record, and any reasonable inferences that can be drawn from them, but may not vouch for the credibility of a witness based on personal belief or by referring to evidence outside the record.  [Citations.]" (*People v. Martinez* (2010) 47 Cal.4th 911, 958.)  To put it another way, "[p]rosecutorial assurances, *based on the record,* regarding the apparent honesty or reliability of prosecution witnesses, cannot be characterized as improper 'vouching,' which usually involves an attempt to bolster a witness by reference to facts *outside* the record.  [Citation.]" (*People v. Medina* (1995) 11 Cal.4th 694, 757.)

Our review of this issue is guided by our Supreme Court's opinion in *People v. Bonilla* (2007) 41 Cal.4th 313 (*Bonilla*).  In *Bonilla,* the court summarized the applicable legal principles as follows: "It is misconduct for prosecutors to bolster their case 'by invoking their personal prestige, reputation, or depth of experience, or the prestige or reputation of their office, in support of it.'  [Citation.]  Similarly, it is misconduct 'to suggest that evidence available to the government, but not before the jury, corroborates the testimony of a witness.'  [Citation.]  The vice of such remarks is that they 'may be understood by jurors to permit them to avoid independently assessing witness credibility and to rely on the government's view of the evidence.'  [Citation.]  However, these limits do not preclude all comment regarding a witness's credibility.  ' " [A] prosecutor is given

23

wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.' " ' [Citation.] '[S]o long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the "facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief," [the prosecutor's] comments cannot be characterized as improper vouching.' [Citations.]" (*Id.* at pp. 336–337.)

Before each of the three statements that appellant characterizes as vouching, the prosecutor outlined specific evidence that the jury had heard. Before the first statement the prosecution had reviewed excerpts of Jane I's testimony and told the jury that the law permitted the jury to convict on the testimony of one witness. Immediately thereafter, the prosecutor told the jury, "Keep in mind there's other evidence. But that's your basic analysis. That's how you determine whether somebody's guilty of a charge or not. And we haven't gone over [appellant's] statement. We haven't gone over [Jane II]'s testimony, [Jane I]'s [sic] testimony, Eric's, [mother]. There's so much more evidence in this case to make that conclusion." As to the second statement, the prosecutor replayed a portion of the videotaped conversation where appellant admitted to a detective that he touched Jane I on the thigh while at a hotel. Immediately before the statement to which appellant objects, the prosecutor commented, "So there's touching going on. Corroborates [Jane I]'s testimony. Defendant tells you that she's being touched." As to the third statement, the prosecutor replayed another clip from the same videotaped conversation in which appellant described two separate occasions where he touched Jane I's buttocks. The prosecutor explained the significance of the evidence as being "the value of the defendant's statement is not necessarily—he's not necessarily coming clean completely clean to Detective Bravo. The value in this is it leaves you with an abiding conviction that everything is true."

24

Rather than vouching for the witnesses' truthfulness based on his personal belief, in all three instances the prosecutor was pointing out the strength of the corroborating evidence from which the jury could be sure that the witnesses were telling the truth. We find no prosecutorial misconduct. (*Bonilla*, *supra*, 41 Cal.4th at p. 337.)

*Cumulative Error*

Finally, appellant argues that the cumulative effect of all the alleged errors was prejudicial and violated his right to a fair trial and his due process rights.

Certainly, " '[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.' [Citation.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.) The combined effects of multiple errors may indeed render a trial fundamentally unfair. (See *People v. Cuccia* (2002) 97 Cal .App.4th 785, 795.) However, as discussed *ante*, since we have found none of appellant's claims of error meritorious, a cumulative error argument cannot be sustained. No serious errors occurred, which whether viewed individually or in combination, could possibly have affected the jury's verdict. (*People v. Martinez* (2003) 31 Cal.4th 673, 704; *People v. Valdez* (2004) 32 Cal.4th 73, 128.) Simply put, since we have found no substantial error in any respect, appellant's claim of cumulative prejudicial error must be rejected. (*People v. Butler* (2009) 46 Cal.4th 847, 885.) Appellant was entitled to a fair trial, not a perfect one. (*People v. Bradford* (1997) 14 Cal.4th 1005, 1057.)

25

*Disposition*

The judgment is affirmed.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.